550

## LEMIEN v. UNITED STATES.
### No. 11632.

Circuit Court of Appeals, Fifth Circuit.
Dec. 23, 1946.

Rehearing Denied Feb. 5, 1947.

Robert D. Wigginton, of Gulfport, Miss., for appellant.

Toxey Hall, U. S. Atty., and Robert E. Hauberg, Asst. U. S. Atty., both of Jackson, Miss., for appellee.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

The appellant was convicted by a jury of willfully failing to report for induction into the armed forces of the United States, in violation of the Selective Training & Service Act of 1940.[1] He appealed from the judgment that was entered upon the verdict, and seeks reversal thereof upon the ground that he was a regular minister of religion who was exempt from military training and service.

Appellant was not represented by counsel in the court below; and he stated, in response to questions by the court, that he preferred not to have an attorney, although

1 54 Stat. 894, Sec. 11, 50 U.S.C.A. Appendix, § 311.

he was able to employ one. The court offered to appoint an attorney to represent him, but he declined the offer. No point is raised here as to the absence of counsel, because it is apparent that the right to have the assistance of counsel for his defense was intelligently waived by the accused. He is, however, represented by a competent attorney on this appeal.

The United States Attorney, on cross-examination in the court below, put before the jury the only defense that was available to the defendant. He claimed exemption as a minister of religion under Section 5(d) of the above-cited Act, 50 U.S.C.A.Appendix, § 305(d). The court below charged the jury fully and fairly upon the law as announced in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423. No exception was taken to the charge by either side. The decisive question before us is whether there was sufficient evidence to support the verdict of guilty, and we shall turn our attention to that issue.

Three witnesses testified on behalf of the Government. From their testimony and the official records produced, the following appears: The appellant was born on July 14, 1925; he registered with his local draft board on July 14, 1943, which was his 18th birthday. He was given a classification of 1-A by the appeal board. He was ordered to report for induction on July 30, 1945. No appeal was pending in his case on the date of entry of this order. He failed to report, but requested a personal appearance before the board, which request was granted. He came before the local board and

was given a hearing that lasted about 15 minutes, but his classification was not changed. He then received his preinduction physical examination and was found qualified for service. He was again ordered to report for induction. This order commanded him to report on August 23, 1945. He says that he did not report because "he was not supposed to report under the law."

At the time appellant testified in the court below, he was 20 years of age and claimed to have been a minister of Jehovah's Witnesses since he was 11. He said he was ordained by God. He had no certificate of authority except a representative card signed by himself.[2] There was no proof as to his means of livelihood, as to the amount of time devoted to his ministry, as to his compensation as a minister, or as to the time devoted by him to any other business or calling.

The questions before the court below were as to whether the local board had given him a fair hearing; and, if it had, whether there was a reasonable basis in fact for his classification in 1-A. The second question depends in turn upon whether there was a rational basis for the board's finding that the registrant was neither a regular nor duly ordained minister of religion.

First, the burden of proving that he had not been given a fair hearing and was a regular or duly ordained minister of religion was upon the defendant, and he failed to meet it in any respect.[3] The registrant did not request a hearing before the

[2] "Q. Let me ask you this question. Who ordained you? Who ordained you as a minister? A. We are ordained by God.

"Q. What is your certificate of authority or degree or whatever else you have to show you are an ordained minister? A. I have my representative card, but I haven't got it in my possession at present.

"Q. What does it state? A. That we are ordained ministers.

"Q. By whose authority is that issued? A. It is issued by God.

"Q. Your God issued you that card? A. According to the Scriptures.

"Q. Who signed that card? A. I signed it. It is issued by the Watch Tower Bible & Tract Society.

"Q. You signed your own card delegating yourself as a minister? A. It has to be signed to show I am not an impostor.

"Q. You signed that card yourself stating you were a minister? A. I stated that at the bottom of it.

"Q. How long have you had such a card as an ordained minister? A. I have had it for a number of years.

"Q. Have you had it since you were eleven? A. Yes, sir.

"Q. What kind of preaching did you do at eleven? A. Evangelical preaching." (Testimony of appellant on cross-examination, p. 33 of transcript.)

[3] Harris v. Ross, 5 Cir., 146 F.2d 355.

local board until after an order to report for induction had been mailed to him. His request was granted and a hearing was had, but the board was forbidden to reopen the classification after it had mailed the registrant an order to report for induction, unless the board first specifically found that there had been a change in his status resulting from circumstances over which the registrant had no control.[4] There was no such finding by the board and could not have been, because there was no proof of a change in his status. The appellant invoked the hearing, and is not contending that it ought not to have been granted. He is complaining that it was inadequate and unavailing. He was not affected by this hearing, either beneficially or prejudicially, and we find no merit in his contention with respect to it.

As to the second point, there was substantial evidence to support the board's finding that the appellant was not a regular or duly ordained minister of religion. If it be conceded that the evidence would have sustained a contrary finding, nevertheless the determination of the issue was within the jurisdiction of the local board, and its decision was final unless reversed on appeal. We have seen that the appeal board sustained the local board, and no appeal was taken to the President.

Under the scheme of the selective service law, as construed by the Supreme Court, the claim for exemption is decided first by an administrative board of local citizens who are familiar with the common acceptation of ordinary words; and upon judicial review in a criminal prosecution the issues of fact are submitted to a jury who are also presumed to know the meaning of words in common use, such as "regular or duly ordained ministers of religion." This interpretation avoids a metaphysical discussion, and puts the decision of the question as to who are ministers of religion upon a practical basis.[5]

It appears, therefore, that both local and appeal boards, judge and jury, in administrative hearings and by judicial review, have decided against appellant the respective issues submitted to them. The latter has wholly failed to prove that either his classification or induction was void. Resolving all conflicts in the evidence, and all conflicting inferences therefrom, against the registrant, an appellate court must affirm the judgment of the district court in this case unless a fair and impartial tribunal was in reason bound to find as a fact that he was a regular or duly ordained minister of religion within the usual and ordinary meaning of those words.

After an examination of the entire record, we find no reversible error therein, and the judgment appealed from is affirmed.

---

[4] Section 626.2 of Selective Service Regulations.

[5] See 50 U.S.C.A.Appendix, § 305(d), as follows: "Regular or duly ordained ministers of religion, and students who are preparing for the ministry in theological or divinity schools recognized as such for more than one year prior to the date of enactment of this Act, shall be exempt from training and service (but not from registration) under this Act."