## UNITED STATES v. BARTELT.

### No. 10670.

United States Court of Appeals,
Seventh Circuit.

Dec. 9, 1952.

---

Lyle W. Bartelt, Kewaskum, Wis., for appellant.

Timothy T. Cronin, U. S. Atty., and Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal by the defendant, Lester Allen Bartelt, from a judgment finding him guilty and sentencing him to imprisonment for two years for refusing to submit to induction in the Armed Forces of the United States as required by the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq.

The principal question involved in this case is the correct interpretation of 50 U. S.C.A.Appendix, § 456(g), which provides for exemption from military training and service for those students preparing for the ministry who meet the requirements established in this section of the Code. This section of the Act provides for exemption from military training or service of "students preparing for the ministry under the direction of recognized churches or religious organizations, *who are satisfactorily pursuing full-time courses of instruction* in recognized theological or divinity schools, * * *." (Our emphasis.)

The defendant registered on September 14, 1948, with the local Draft Board at Sheboygan, Wisconsin. In his classification questionnaire, filed December 9, 1948, the defendant stated that since June, 1948, he had been engaged with his father in the operation of his father's farm and that because of his father's health, the defendant had been compelled to do all the heavy farm work. The defendant stated in the questionnaire that he had "quit college to work full time on the farm, due to arthritis condition of my father." In this questionnaire the defendant also stated that his work on the farm required 60 to 70 hours per week. On the basis of the information so furnished by the defendant he was classified 1-A and was so notified.

Thereafter the defendant was granted a personal appearance before the Board during which he stated, under oath, that he had quit college because of "failures in two courses," but he explained that if he had not failed in college he would have dropped out of school anyway because he "didn't like school any more. Fourteen years was enough. I wasn't interested in studying any more." After this hearing the Board reconsidered the defendant's classification and again classified him as 1-A by unanimous vote and so notified him. From this action of the Board the defendant appealed but his 1-A classification was affirmed unanimously by the Appeal Board.

On July 24, 1950, the defendant filled out and filed with the Board the special form provided by the Board for claiming exemption as a conscientious objector. On August 10, 1950, the information supporting this claim was considered by the Board but it refused to reopen the defendant's case and his classification remained the same.

Pursuant to notice of October 2, 1950, from the Board, the defendant reported for and was given a physical examination, from which he was found to be acceptable for military service. He was notified of this fact on October 30, 1950.

On January 20, 1951, less than three months after he had been notified that

he had passed his physical, the defendant informed the Board by letter that he was then attending the Theocratic Ministry School to become a Minister of Jehovah's Witnesses and was, therefore, entitled to a 4-D classification. After considering this claim, the Board, on January 25, 1951, again refused to reopen the defendant's classification for further consideration. The next day the Board sent the defendant a letter ordering him to report for induction on February 12, 1951. However, on January 29, 1951, the Board sent the defendant another letter requesting further information concerning his claim for exemption as a student for the ministry and on February 1, 1951, granted the defendant a second opportunity to appear in person before the Board. During this appearance the defendant admitted that he was still doing full time work on the farm and that he was attending the ministry school only on Friday evenings for a period of two hours, but he claimed that he sometimes did as much as ten hours work a week in preparation at home. Once more the Board refused to reopen the matter and so notified the defendant by letter dated February 5, 1951.

When the defendant reported for induction in Milwaukee, Wisconsin, on February 12, 1951, he refused to be inducted. At that time he wrote and signed a statement in which he said that he refused "to be inducted into the Armed Forces because as a member of Jehovah's Witnesses, I have become a minister of Jehovah and in agreement with my faith, am a conscientious objector."

The defendant contends that the District Court erred in failing to find that on the evidence in this case there was no basis for the classification of the defendant and also erred in failing to find that the Draft Board acted arbitrarily and capriciously.

Counsel for the defendant admits that in Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567, the Supreme Court limited, in cases such as this, the customary scope of judicial review which is available under other statutes providing for appeals from administrative decisions. The Supreme Court in that case, in discussing the significance of Congress having made the action of the local boards "final," said:

"The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

In the Estep case the Supreme Court cited with approval Goff v. United States, 4 Cir., 135 F.2d 610, 612, in which latter case the Court of Appeals had said that in a criminal proceeding the action of the board "is to be taken as final, notwithstanding errors of fact or law, so long as the board's jurisdiction is not transcended and its action is not so arbitrary and unreasonable as to amount to a denial of constitutional right." In Cox v. United States, 332 U.S. 442, 448, 68 S.Ct. 115, 118, 92 L.Ed. 59, the Supreme Court, in another criminal case, reiterated the statement it had made in the Estep case that "the question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

The defendant here apparently does not challenge his original 1-A classification nor the subsequent affirmance of this classification by the Appeal Board. On his original classification the defendant was given everything he requested except the deferred classification. He was permitted to come in person before the Board and explain why he thought that he should be deferred because of the farm work he was doing. At that time the defendant did not mention any religious scruples against war nor indicate any intention of studying for the ministry. In fact the defendant did not join Jehovah's Witnesses until July, 1950, a year after his original classification had been affirmed by the Appeal Board. On July 24, 1950, within a month after he joined Jehovah's Witnesses, the defendant filed his claim to deferment as a conscientious objector, but the local Board re-

fused to reopen his case. The defendant in connection with his claim as a conscientious objector made no mention of his being then enrolled as a student preparing for the ministry. The defendant now points to no such error of the Board in rejecting his claim as a conscientious objector as would make the action of the Board invalid.

The defendant apparently bases his entire case in this appeal on the action of the Board in refusing to reopen the question of his classification on receipt by the Board of the defendant's letter on January 22, 1951, in which the defendant stated that he was entitled to deferment as a student preparing for the ministry. It was this action of the Board which the defendant now claims was motivated by prejudice against his religion. It was this action which the defendant describes as being so arbitrary and capricious as to make the decision of the Board invalid. But this action of the Board was not a classification of the defendant. It was only a refusal to reopen for further consideration a classification which had been validly made, a classification which the defendant, even now, does not contend was motivated by prejudice or was made as a result of arbitrary and capricious action.

■ The defendant's final attempt to secure a deferred classification was in his letter to the Board which it received on January 22, 1951. In that letter the defendant explained that he then, less than three months after he had been notified that he had passed his physical, claimed deferment for the reason that he was then a student in the Theocratic Ministry School of Jehovah's Witnesses. After considering the defendant's file and the information contained in his letter, the Board again, on January 25, 1951, refused to reopen his classification and on the next day, January 26th, the Board ordered the defendant to report for induction on February 12, 1951. The mailing of this letter ordering the defendant to report for induction took from the Board the power to reopen his classification without first specifically finding that there had been "a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 Code of Federal Regulations, § 1625.2; Lemien v. United States, 5 Cir., 158 F.2d 550, 552. Nevertheless, the Board, by letter, did request further information from the defendant as to his student status and on February 1, 1951, did permit the defendant another personal appearance before the Board.

■ Counsel for the defendant contends that in the course of this last hearing the members of the Board did not ask the defendant one relevant question. With this contention we cannot agree. The defendant was asked, and answered, sufficient questions to show that he was not entitled to exemption as a student preparing for the ministry. The defendant's answers to the Board showed that he was still working full time on his father's farm; that he was attending the ministerial school only once a week for a two-hour period; and that he spent not more than ten hours per week in home preparation. These facts furnished a sufficient basis for a valid determination by the Board that the defendant did not meet the requirements of Congress for exemption as a student preparing for the ministry.

■ One claiming exemption under the Act as a student preparing for the ministry must be "satisfactorily pursuing" a "full-time" course of instruction in a recognized theological or divinity school. Counsel for the defendant seems to argue that attending class only once a week for a period of only two hours constituted a full time course for students in the Theocratic Ministry School who were preparing to become ministers in Jehovah's Witnesses. If this be true, it would not be decisive of the meaning the courts must ascribe to the words "full-time course" as used by Congress in this Act. We must determine the intent of Congress by the ordinary meaning of the words used, not by a meaning ascribed to those words by some particular group or sect.

In Cox v. United States, 332 U.S. 442, 451, 68 S.Ct. 115, 119, 92 L.Ed. 59, the de-

fendants insisted that they were to be considered as ministers within the meaning of the Act because they were so considered by the church of which they were members. But the Supreme Court held:

"The documents show that Thompson and Roisum spent only a small portion of their time in religious activities, and this fact alone, without a far stronger showing than is contained in either of the files of the registrants' leadership in church activities and the dedication of their lives to the furtherance of religious work, is sufficient for the board to deny them a minister's classification."

As said by the court in Rase v. United States, 6 Cir., 129 F.2d 204, 209, with regard to the defendant's contention that he was a minister of religion within the meaning of the Act:

"The phrase 'minister of religion' as used in the Act is to be interpreted according to the intention of the Congress, and not by the meaning attached to it by the members of any particular group. * * * The statutory exemption must be applied in consonance with the clearly apparent purpose of the Congress, and not in response to the interpretation placed upon it by particular religious groups or their adherents."

And in Lemien v. United States, 5 Cir., 158 F.2d 550, 552, the court stated:

"Under the scheme of the selective service law, as construed by the Supreme Court, the claim for exemption is decided first by an administrative board of local citizens who are familiar with the common acceptation of ordinary words; and upon judicial review in a criminal prosecution the issues of fact are submitted to a jury who are also presumed to know the meaning of words in common use * * *. This interpretation avoids a metaphysical discussion, and puts the decision * * * upon a practical basis."

To the same effect see Martin v. United States, 4 Cir., 190 F.2d 775, 777.

■ The ordinary meaning of pursuing a full time course in preparation for the ministry calls for much more than class attendance for two hours, one night each week. If the same facts which were presented to the Board by the letter and testimony of the defendant concerning his status as a student preparing for the ministry had been presented to the Board at the time the Board was first considering the defendant's classification, there would have been ample basis for the Board to refuse him exemption from military service and to classify him as 1-A.

■■ When these same facts were presented to the Board only to show a change of status which would entitle the defendant to a different classification, the question of reopening the classification was a question for the discretion of the Board. Where, as here, the evidence so clearly shows that the defendant was not entitled to the classification for which he was asking, we certainly cannot say that the Board abused its discretion in refusing to reopen the defendant's classification. Smith v. United States, 4 Cir., 157 F.2d 176, 181.

The judgment of the District Court is Affirmed.