UNITED STATES of America,
Appellee,

v.

Vincent Francis McGEE, Jr., Defendant-
Appellant.

No. 177, Docket 33568.

United States Court of Appeals,
Second Circuit.

Argued Sept. 30, 1969.

Decided March 31, 1970.

Alan H. Levine, New York City (Marvin M. Karpatkin, J. Edward Meyer, III, New York City, on the brief), for defendant-appellant.

Ross Sandler, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, James D. Zirin, Asst. U. S. Atty., on the brief), for appellee.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

Vincent Francis McGee, Jr. appeals from a judgment of conviction for violating 50 U.S.C.App. § 462(a), following a trial before Judge Murphy and a jury in the District Court for the Southern District of New York. McGee was convicted on all four counts of the indictment and was sentenced to imprisonment for two years on each count, the terms to run concurrently. The indictment charged him with refusing to submit to induction (Count 1), to report for a physical examination (Count 2), to possess a valid notice of classification (Count 3), and to submit information that his local board had requested (Count 4).

## I.

McGee is a Roman Catholic who is currently a student at the Union Theological Seminary in New York City. He registered with Local Board 15 in Manhattan in August 1961, and informed the board a month later that he was "a student preparing for the ministry at the Cathedral College of St. Joseph's Seminary * * * under the direction of Roman Catholic Church." He took a leave of absence from the College in 1963, during which period his board classified him I-A. In August 1964, he passed the preinduction physical that his board had ordered. A short time later, after enrolling in the University of Rochester, he was granted a II-S (student) deferment. He was temporarily reclassified I-A in September 1965, but his II-S classification was renewed shortly thereafter. In February 1966, while still classified II-S, McGee requested conscientious objector status, stating that it was his "intention to continue on to actual ordained Priesthood." The clerk of his board wrote him on March 23:

> This will advise that the recent evidence submitted, concerning your case has been reviewed by the Local Board. It is the decision of the Board that such evidence does not justify the reopening of your case and reconsideration of your present classification.

> However, we wish to advise that your claim as Conscientious Objector will be considered when you no longer qualify for a student classification.

McGee did not appeal this decision; he later requested and was granted a further II-S classification in October 1966.

In April 1967, while still classified II-S and enrolled in the University of Rochester, McGee wrote President Johnson, enclosing remnants of his torn and burnt draft card. This letter stated that even though he had "already been accepted for graduate study in a program where" he "would probably qualify for the theological deferment," he felt it necessary to "sever every link with violence and war" and to refuse to cooperate "with the military-industrial complex which seems to be dictating our international policy." McGee's local board received a copy of this letter, apparently considered reopening his classification and decided against it, and, in any event, did not change his II-S classification and deferment. Following McGee's graduation from the University of Rochester in June 1967, his board sent him a Current Information Questionnaire. McGee returned it unanswered, and in a covering letter announced that "further correspondence" from the draft board would "simply be returned unopened," consistent with his belief that "cooperation is approval." On September 19, 1967, almost two months after receipt of this letter by the local board, McGee was reclassified I-A. The Board mailed him a notice of classification and a letter clearly informing him that he had a right to ask for a personal appearance or an appeal within 30 days, that the board had a Government Appeal Agent to aid him "with a personal appearance, an appeal, or any other procedural right," and that the Appeal Agent or his representative would give him legal counsel on Selective Service matters at no charge. McGee returned this unopened, writing on the envelope

> Returned pursuant to previous declaration and notification.

McGee also returned unopened an order directing him to appear for a physical examination scheduled for October 18, 1967, and did not appear for it. He returned a delinquency notice sent on November 22, 1967. McGee did open his induction notice, which was sent on January 11, 1968, and did report for and pass a physical examination at the induction center. However, he refused to submit to induction.

Meanwhile, McGee had matriculated in the Union Theological Seminary as a full-time student on September 27, 1967. At no time did he request a IV-D (student for the ministry) classification from his draft board, but he claims that his letter to the President in April 1967, an interview with two FBI agents in May 1967, and testimony before a grand jury

in November 1967, gave his board sufficient information to require classifying him IV-D. At trial, it was established that the Union Theological Seminary is non-denominational, and that McGee's parish priest recommended him to the Seminary. The chairman of McGee's draft board testified outside the presence of the jury that before McGee was classified I-A in September 1967, all pertinent information in his Selective Service file was reviewed. Judge Murphy found that the board considered and rejected appellant's conscientious objector claim.

McGee argues that his local board acted unlawfully in classifying him I-A in September 1967, when in his view he should have been classified IV-D or I-O. On that premise he claims that he cannot be convicted of refusing to submit to induction (Count 1) because his order to report for induction was illegal; that he cannot be convicted of refusing to report for a physical examination (Count 2) because if he had been properly classified, he would not have been called for a physical or, if called, could have waived the examination without penalty; and that he cannot be convicted of failing to possess a valid notice of classification (Count 3) because his I-A classification was invalid. He also argues that he cannot be convicted of failure to supply information to his local board (Count 4) because he substantially complied with its request and because any information not supplied was favorable to him.

## II.

We shall deal first with McGee's claim that he was entitled to exemption from military service as a matter of law under 50 U.S.C.App. § 456(g), which provides that:

[S]tudents preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools * * * shall be exempt from training and service (but not from registration) under this title.

McGee contends that the statutory policy is so strong that the exemption may not be denied any registrant who meets the qualifications. He concedes that he did not request the exemption from his board, but claims that no such request is required by the statute or regulations. In any event he argues that the local board had sufficient knowledge of his qualification for the exemption to require its issuance.

■■ It is true that section 456(g) is a mandatory provision in the sense that a draft board may not deny a IV-D exemption to one who qualifies for it. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).[1] However, it does not follow that a registrant may totally disregard the administrative procedures established by the Selective Service Sys-

---

1. McGee attempts to bring his case within *Oestereich, supra,* on the further ground that he was denied IV-D and classified I-A as punishment for burning his draft card, writing to President Johnson, and refusing to cooperate with his local board. Apart from any other considerations, the record simply does not establish this contention. McGee wrote to the President, enclosing remnants of his draft card, in April 1967. His local board received a copy of this letter on April 27. However, appellant was not classified I-A until September 19, 1967, when his II-S deferment expired following his graduation from the University of Rochester. This was almost five months after the board was informed of the letter to the President and almost two months after McGee announced his intention to return board correspondence unopened. These are hardly the actions of a draft board that is acting lawlessly. Moreover, *Oestereich* is further distinguishable because appellant there sought redress through the Selective Service System and was unjustifiably deprived of a IV-D exemption which he had already obtained. McGee never applied for a IV-D classification and it is impossible to perceive how the local board could have punitively deprived him of an exemption he had never requested.

tem, and rely on his own evaluation of his right to a IV-D classification in the hope that a court will subsequently support his interpretation. While McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969), states that "[i]n Selective Service cases, the exhaustion doctrine must be tailored to fit the peculiarities of the administrative system Congress has created," it recognizes that the exhaustion doctrine may well be applicable to IV-D claims like McGee's, where the registrant is relying on facts never clearly presented— or indeed presented at all—to his local board.

Of course, it is necessary that the local board, which has the responsibility of classifying registrants in the first instance, be given the information necessary to perform its function. However, the present case does not present an instance where a registrant is trying to challenge a classification on the basis of _facts not presented_ to the local board. In such a case, the smooth functioning of the system may well require that challenges to classifications based upon facts not properly presented to the board be barred.

395 U.S. at 198 n.15, 89 S.Ct. at 1665.

_McKart_ dealt with the proper interpretation of the "sole surviving son" exemption, 50 U.S.C.App. § 456(_o_), which the Court found to be only a question of statutory interpretation and "certainly not a matter of discretion." _Id._ at 198, 89 S.Ct. at 1665. Accordingly, it refused to apply the exhaustion doctrine in that case because there was "simply no overwhelming need" to have the Selective Service System "resolve this question in the first instance, at least not where the administrative process is at an end and the registrant is faced with criminal prosecution." _Id._ at 199, 89 S.Ct. at 1665. McKart's claim was thus in sharp contrast to "classification questions which do involve expertise or the exercise of discretion, both by the local boards and the appeal boards." _Id._ at 198, 89 S.Ct. at 1665. Thus,

Conscientious objector claims * * * or deferments for those engaged in activities deemed necessary "to the maintenance of the national health, safety, or interest" * * * would appear to be examples of questions requiring the application of expertise or the exercise of discretion. In such cases, the Selective Service System and the courts may have a stronger interest in having the question decided in the first instance by the local board and then by the appeal board, which considers the question anew.

_Id._ at 198 n.16, 89 S.Ct. at 1665. In further distinguishing the earlier body of cases which did apply the exhaustion doctrine, the Court noted that:

[T]hose cases all involved ministerial or conscientious objector claims, claims that may well have to be pursued through the administrative procedures provided by the Selective Service laws.

_Id._ at 201, 89 S.Ct. at 1666.

McGee's claim for a IV-D exemption here depended upon resolution of essentially factual issues which are by no means conceded. This distinguishes such cases as _McKart, supra,_ where the facts were undisputed, and _Oestereich, supra,_ where the board had already recognized the registrant's right to a IV–D classification.[2] Whatever the draft board's determination might have been had McGee applied to it for IV-D status and supplied it with full information, even the facts adduced _at trial,_ as will be seen below, do not show that he was so clearly entitled to that exemption that the draft board could have arrived at but one conclusion. Accordingly, McGee's

**2.** For other cases where the claim by a student to a IV-D classification raised factual issues, see Eagles v. United States ex rel. Samuels, 329 U.S. 304, 316–317, 67 S.Ct. 313, 91 L.Ed. 308 (1946) (nature of the seminary, motives of the registrant); United States v. Bartelt, 200 F.2d 385 (7 Cir. 1952) (whether registrant was full-time divinity student); United States ex rel. Levy v. Cain, 149 F.2d 338 (2 Cir. 1945) (nature of seminary and studies, registrant's intentions).

failure even to request a IV-D exemption from the local board or supply it with any supporting information is a sufficient ground for disposition of that claim.

■ Beyond that it is plain that denial of a IV-D exemption to McGee would have had a "basis in fact." Under section 456(g), at least two requirements must be satisfied before a divinity student becomes entitled to a IV-D exemption: He must be a student preparing for the ministry under the direction of a recognized church or religious organization; and he must be satisfactorily pursuing a full-time course of instruction in a recognized theological or divinity school. As to the latter, it is clear that at the time McGee refused induction[3] he was a matriculated student at the Union Theological Seminary who was satisfactorily pursuing a full-time course of study. What is in dispute, however, is whether McGee was preparing for the ministry under the *direction* of a recognized church or religious organization. There is evidence in the record that McGee is a Catholic and that he intends ultimately to become a priest, but the evidence that he was studying under the direction of the Catholic Church when he refused induction is slim. His parish priest testified that he had recommended McGee to the Seminary, but that could have meant no more than that he thought McGee to be a serious and decent young man. The priest did not say he was in any way supervising McGee's course of study. According to the record, the divinity school in which McGee enrolled is non-denominational and may contain many students who have not formulated the intention of entering the ministry and are not under the direction of any church or religious organization. The record discloses that at least some of the Catholic students at the school come from Catholic seminaries to take courses there, but McGee did not. Indeed, McGee apparently had been a student at such a Catholic seminary, but left to go to Hunter College and then the University of Rochester where he receive a Bachelor of Science degree.[4] Accordingly, McGee's local board would not have had to conclude that he was "preparing for the ministry under the direction of" the Catholic Church. Perhaps the board would have granted the exemption had McGee made the claim directly to it; perhaps not. But we cannot say that if it had followed the latter course, there would have been "no basis in fact" for its action.[5]

### III.

In contrast to his inaction with respect to the IV-D claim, McGee had squarely placed his I-O application before the local board when he requested and completed the Special Form for Conscientious Ob-

3. We assume only for purposes of discussion that this is the key date, rather than some earlier time, e. g., date of reclassification by the board.

4. While at the University of Rochester, McGee took some courses at Colgate Rochester Divinity School.

5. McGee claims that the trial judge incorrectly read into the statute a requirement that the divinity school itself be under the direction of a recognized church or religious organization in order that its students can qualify for a IV-D exemption. Such an interpretation of the statute would indeed be wrong since it is the student, not the school, to whom that language applies. However, we do not believe the trial judge thus misinterpreted section 456(g). Hav-

ing found, correctly, that Union Theological Seminary is "a non-denominational seminary," he did not treat this as dispositive of the IV-D claim, but rather refused to treat proof of full-time attendance at a recognized non-denominational divinity school as alone supplying the other prerequisite for the exemption. In other words the finding indicated only that since Union Theological Seminary was non-denominational, the nature of the school could not of itself supply the missing element of "direction," as, for example, might be the case for a denominational seminary. We agree with that conclusion. Cf. Eagles v. United States ex rel. Samuels, 329 U.S. 304, 310, 316–317, 67 S.Ct. 313, 91 L.Ed. 308 (1946) ; United States ex rel. Levy v. Cain, 149 F.2d 338, 341 (2 Cir. 1945).

jector in February 1966.[6] He contends that there was no basis in fact for denying his conscientious objector claim and that his reclassification as I-A was thus unlawful.

■ We would be inclined to accept the first step in McGee's argument. In his Form 150 he expressed his belief "in a personal Supreme Being to whom obligation is superior when duties of human relations are considered," and said that "taking part in any form of military operation indicates an approval/consent situation repugnant * * * to love and service of God and fellow man." These and other statements, if sincere, established that he, "by reason of religious training and belief, is conscientiously opposed to participation in war in any form." 50 U.S.C.App. § 456(j). Neither his prior nor his subsequent actions were inconsistent with his assertions, see United States v. Haughton, 413 F.2d 736, 742 (9 Cir. 1969), and we see nothing in McGee's file—all that was before the board—that could reasonably put his sincerity in issue. This is particularly significant in light of the board chairman's testimony that McGee's local board did not require an interview for con-

scientious objector applicants, although it undoubtedly could have.[7]

While in this case we have the benefit of the testimony of the chairman of the local board, that does not reveal any "basis in fact" for denying McGee's application. As indicated, the statement of beliefs in his Form 150 would seem to meet · the statutory test, and what little testimony there is by the board chairman concerning McGee's sincerity would, if anything, support a conclusion that the local board thought McGee was sincere. He testified that McGee "had been offered an alternative to the deferment he sought, which was a I-O, hospital service. He did not choose to avail himself of that." He further testified that "[t]here was a letter written * * * where we were advised that the young man would not accept a I-O or inferred that he wouldn't." This testimony was inaccurate. The letter referred to was by John A. Murray, dated February 1966; far from indicating that McGee would not accept a.I-O, it was in support of his application.[8]

■■ Acceptance of so much of McGee's argument still does not lead to his conclusion unless ·he is to be excused

---

6. While McGee never protested the draft board's action, neither did he ever withdraw the application. The Government makes a fleeting argument that McGee "no longer desired a I-O deferment." If by this is meant that McGee had withdrawn his request for I-O, it is incorrect, as the Board was never so notified. Selective Service procedures then and now in force make clear that such a claim would have had to be withdrawn in writing. Local Board Memorandum No. 41, as amended, August 15, 1952, reported in Selective Service Law Reporter ("S.S.L.R.") 2174 (including amendments of July 30, 1968, which are not here ·relevant). Moreover, McGee's letter to his board, dated July 23, 1967, in which he announced his policy of non-cooperation, restates his "personal conscientious commitment."

7. The Selective Service System currently advises a local board that if it determines that it cannot grant the I-A-O or I-O classification claimed, the local board

should invite or request the registrant to meet with it for an interview prior to classification. The primary purpose of the interview will be to develop further facts on which the conscientious objector claim is based, and the sincerity of such claim. This interview does not take the place of the personal appearance which the registrant may request under Section 1624.1, after the classification action.
Local Board Memorandum No. 41, as amended July 30, 1968, *supra* note 6.

8. What the chairman of the board may have meant was that McGee's application for I-O indicated that even if he were granted such a I-O, he would not report for alternative civilian service, as required under the Act. However, this eventuality never came to pass. In any event, on this record we would not regard McGee's statement that he would not accept alternate service as a "basis in fact" for denying a I-O classification.

from failure to appeal his I-A classification. We see no reason for doing so. To the passages from *McKart* already quoted, we add another, 395 U.S. at 200, 89 S.Ct. at 1666:

> [T]oday's holding does not apply to every registrant who fails to take advantage of the administrative remedies provided by the Selective Service System. For, as we have said, many classifications require exercise of discretion or application of expertise; in these cases, it may be proper to require a registrant to carry his case through the administrative process before he comes into court.

Mr. Justice Marshall listed four factors that ordinarily justify application of the exhaustion doctrine to bar a defendant from challenging a local board's classification: (1) "judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise"; (2) judicial efficiency may be furthered because a "complaining party may be successful in vindicating his rights in the administrative process"; (3) "notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors"; and (4) "it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." 395 U.S. at 194–195, 89 S.Ct. at 1663. All the last three factors are present here. An appeal might well have led to McGee's obtaining a I-O classification and have avoided the judicial—and prosecutorial—effort that his flouting of the processes of the Selective Service System has caused. The System should have been given an opportunity to correct the error of the local board. And sanctioning McGee's deliberate refusal to avail himself of procedures which the Government had made available to him would encourage others to do so, especially in cases where the chances of success in court seem good.

On all this we find ourselves in agreement with the sensitive opinion of Judge Goodrich and in disagreement with the able dissent of Judge Maris in a case strikingly similar to McGee's, United States v. Palmer, 223 F.2d 893 (3 Cir.), cert. denied, 350 U.S. 873, 76 S.Ct. 116, 100 L.Ed. 772 (1955). We agree also with the decision of another court of appeals, made in the light of *McKart*, which refused to excuse failure to appeal the revocation of a hardship deferment, United States v. Powers, 413 F.2d 834 (1 Cir. 1969).[9] The entire subject has just been exhaustively canvassed by the Ninth Circuit in Lockhart v. United States, 420 F.2d 1143, decided December 18, 1969, and we agree with Judge Ely's opinion for a majority of the court *in banc*. Moreover, the position taken by the two dissenting judges supports "forfeiture of judicial review" for failure to exhaust "when the registrant has deliberately sought to subvert and evade the administrative process," the situation here, as distinguished from a case where the "default was merely inadvertent or negligent."

Our brother Feinberg argues for a different result on the basis that the board "never passed on" the conscientious objector claim. We do not read the record that way. The board chairman, called as a defense witness at the trial in November 1968, said that when the McGee conscientious objection application was filed in 1966, he thought "there weren't sufficient facts * * * to motivate me to grant the registrant the request he sought" and that "what he set forth did not motivate me to grant him the relief he sought." He denied instructing the clerk to write that the conscientious objection claim had not been considered—a point on which the letter

9. So far as we have been able to determine, United States v. McNeil, 401 F.2d 527 (4 Cir. 1968), vacated and remanded for further consideration in the light of *McKart*, 395 U.S. 463, 89 S.Ct. 2025, 23 L.Ed.2d 446 (1969), has not been again decided.

was ambiguous. He stated also that when the board gave McGee a I–A classification in 1967, "we again reviewed what appeared in the file," that "we reviewed the record of the young man's case when we gave him the I–A and all pertinent information therein contained," and that "the board considered the whole file before it reclassified Mr. McGee I–A on September 19, 1967." While the chairman also testified that "based on our previous determination that his request for conscientious objection status was denied, we had no alternative at that time but to give him a I–A," we read this as meaning only that the chairman remembered the Board's dissatisfaction with McGee's showing when his application was examined in early 1966 and that the Board saw no reason to change their minds eighteen months later. Judge Murphy, who saw and heard the witness, found "as a fact that the draft board considered the defendant's application for a conscientious objector status and that was considered by the whole board on September 23." We do not see how this finding can be regarded as "clearly erroneous."

However, even if there had been an inadvertent failure to consider the conscientious objection claim in September 1967, as the dissent assumes, we would reach the same conclusion. This is precisely the kind of thing that a personal appearance or a conference with the Appeal Agent, which McGee was invited to have in the letter he returned unopened, would have been almost certain to reveal, with the result that the board would have passed on the merits of McGee's claim. Quite possibly it would have acted favorably; if it had not, the error would very likely have been corrected on appeal.[10] Despite their name, appeal boards do not perform simply a reviewing function. "It is universally held that the Appeal Board considers matters of classification *de novo* and its classification is one of first instance, not a mere affirmance or reversal of the Local Board, and that any such prejudice on the local level is cured by a fair consideration on the appeal," De Remer v. United States, 340 F.2d 712, 719 (8 Cir. 1965) (citing cases). See 32 C.F.R. § 1626.26; McKart v. United States, *supra*, 395 U.S. at 198 n. 16, 89 S.Ct. 1657, 23 L.Ed.2d 194; Storey v. United States, 370 F.2d 255, 260 (9 Cir. 1966) (citing cases); Clay v. United States, 397 F.2d 901, 912–913 (5 Cir. 1968), vacated and remanded on other grounds, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969); Note, The Selective Service, 76 Yale L.J. 160, 171 (1966). As already indicated, the fact that McGee had a good factual case for appeal in no way points against insistence on his taking one; a case of statutory construction like *McKart* differs since on such a matter there is a positive advantage in resort to the courts which alone can decide the issue authoritatively and uniformly for the benefit of all registrants. Instead McGee's stiffnecked refusal to have any dealings with the Selective Service System has caused the expenditure of countless hours by prosecutors, grand and petit jurors, and judges of the trial and appellate courts. If we were free to look at his case alone, we might still be tempted to take the charitable view of our dissenting brother. But if we should do that in McGee's case, we would be obliged to do it in every other similar one. Of course it seems "harsh" when the exhaustion requirement results in a conviction for refusal to submit to induction by a registrant with a seemingly good claim for exemption. But one of the main points of the exhaustion doctrine is to relieve the courts from having to consider claims that ought to be dealt with in the first instance by administrative agencies; it cannot properly be limited to those persons whose claims would fail in court anyway.

While there are exceptions to the rule requiring a conscientious objec-

10. Communication between the appeal board and the local board could well have developed the true facts.

tor to appeal from a denial of his claim, none comes close to this case. Claimants are not required to exhaust administrative remedies in order to attack the constitutionality of the statute, United States v. Sisson, 294 F.Supp. 520 (D. Mass.1968) (Wyzanski, J.), probable jurisdiction noted, 396 U.S. 812, 90 S.Ct. 92, 24 L.Ed.2d 65 (1969), or the regulations, United States v. Branigan, 299 F. Supp. 225, 233–236 (S.D.N.Y.1969) (Weinfeld, J.), on the sensible ground that since local and appeal boards have no authority to determine constitutional claims, exhaustion would be a useless formality. Another qualification to the appeal requirement relates to "exceptional and unusual circumstances *underlying the failure to appeal*," Thompson v. United States, 380 F.2d 86, 88 (10 Cir. 1967) (emphasis added). But that line of cases holds only that neglecting to appeal is not a bar to judicial review of classification if the registrant's failure was justified. Examples are Donato v. United States, 302 F.2d 468 (9 Cir. 1962) (registrant received notice of classification while away on firefighting duties; by the time he returned the period for appeal had lapsed); Glover v. United States, 286 F.2d 84 (8 Cir. 1961) (registrant had unsuccessfully appealed a prior classification; when he received his fifth notice of classification, an exact duplicate of the fourth, there was no reason to expect him to go through the process again in the absence of an explanation from the board for the new notice); [11] Powers v. Powers, 400 F.2d 438 (5 Cir. 1968) (registrant given misinformation by the secretary of the local board regarding right to appeal); United States v. Harris, 302 F.Supp. 1194 (D.Ore.1968) (registrant not charged with knowledge of right to appeal since he had little education and read with difficulty). The "exceptional circumstances" doctrine was recently reaffirmed and perhaps extended in United States v. Davis, 413 F.2d 148 (4 Cir. 1969), which held that the local board's failure to advise the registrant of the availability of a government appeal agent excused him from exhaustion: "If an Appeal Agent does nothing more than advise a registrant that he may lose his right to contest his classification when he is criminally prosecuted in the district court by failure to administratively appeal, it would seem to be worthwhile." But that cannot avail McGee who had advised the local board in no uncertain terms that he would not read anything they sent him, and would not have appealed no matter what he was told. While McGee's motives for taking this attitude may have been of the highest, they do not excuse his failure to seek the relief which the law afforded him. To countenance this would needlessly multiply the already heavy burden that cases like his are imposing on the courts.

IV.

We therefore affirm McGee's conviction on Count 1 for refusing to submit to induction. Since his claims with respect to Counts 2 and 3 hinge on the alleged impropriety of his I–A classification, we affirm the convictions on these counts also, without any need to consider what the proper result would be if we had held the I–A classification invalid. In light of the concurrent sentences there is no need to consider the conviction under Count 4 under the circumstances here presented.

Affirmed.

FEINBERG, Circuit Judge (dissenting):

I respectfully dissent.

The Supreme Court has recently told us that "it is well to remember that use of the exhaustion doctrine in criminal cases can be exceedingly harsh." McKart v. United States, 395 U.S. 185, 197, 89 S.Ct. 1657, 1664, 23 L.Ed.2d 194 (1969). This case shows how harsh that concept can be, particularly when—as here—it is applied unnecessarily. The record shows that there was apparently no basis in fact for denying the conscientious ob-

11. The language from the opinion quoted in the dissent must be read in this context.

jector claim of Vincent Francis McGee, Jr. (as to this, we all agree), McGee presented his claim in timely fashion to his local draft board, and that body never passed on the merits of the claim. Despite this, the doctrine of exhaustion of remedies, born in the placid area of administrative law, is invoked thereby consigning McGee to jail for two years. That is too "harsh" for me.

As the majority opinion points out, McGee did present his I–O claim in full to his local board in February 1966. Examination of the record compels the conclusion that McGee's local board did not at that or any other time consider his I–O application on the merits. The board refused to consider his initial application for I–O on the ground that he was then a student, and eighteen months later, in September 1967, refused to classify McGee I–O on the ground that his claim had already been rejected.

32 C.F.R. § 1623.2 requires that "the registrant shall be classified in the lowest class for which he is determined to be eligible." Since II–S (student deferment) is a lower class than I–O according to the hierarchy set forth in that regulation, it would have been improper for the board to grant McGee a I–O so long as he held a II–S, which he unquestionably did at the time he first presented his I–O claim. Thus it is difficult to understand the majority's contention that the local board's letter to McGee dated March 23, 1966 was "ambiguous" on whether the I–O claim had been considered on the merits at that time. McGee then held a II–S classification. Under the regulation, therefore, consideration of the merits of McGee's I–O claim would have been a fruitless task for the board since it would in any event have been obliged to leave his II–S status unchanged. The letter itself advised McGee that "your claim as Conscientious Objector will be considered when you no longer qualify for a student classification"—in light of the regulation, that seems a statement of reason which is plain enough for me. And if there were any ambiguity

left, the testimony of the board chairman resolves it in favor of the conclusion that in February-March 1966, McGee's I–O claim was not considered on the merits. While the majority correctly points out that the chairman testified that when the application was first filed in 1966, "there weren't sufficient facts * * * to motivate me to grant the registrant the request he sought," and that "what he set forth did not motivate me to grant him the relief he sought," he also testified that he rejected the application "at that time * * * *because the young man was attending college* and in my judgment he rated a 2S qualification which we proceeded to give him." (Emphasis added.) Almost immediately thereafter the following interchange took place:

Q. I believe you said before that it was because of his beliefs that you failed to grant him a CO?

A. I did not say anything at all about his beliefs. You can refer to the record. I said in my opinion what he set forth did not motivate me to grant him the relief he sought.

Then came the following interchange between the government attorney and the board chairman (Mr. Lande):

Mr. Robinson: Your Honor, I think Mr. Lande has testified that Mr. McGee was a student at that time and therefore they gave him a 2S classification.

The Witness: I did state that.

In light of the regulation, the letter received by McGee, and the board chairman's own testimony, the conclusion seems inescapable that when McGee applied for I–O in 1966 his claim was properly not considered on the merits, but was denied because he held a II–S classification at that time.

The record also indicates quite clearly that when McGee was classified I–A in September 1967, his I–O application was rejected on the ground that it had previously been considered and rejected, not-

withstanding the fact that the initial rejection was not on the merits. It is true, as the majority joints out, that the trial judge found that the local board "considered the defendant's application for a conscientious objector status and that was considered by the whole board on September 23," and also true that the chairman testified that the board "reviewed the record of the young man's case when we gave him the 1A and all pertinent information therein contained." However, he also testified as to the nature of that review:

The Witness: To the best of my recollection * * * at that time [September 1967] the registrant was no longer in school. *Based on our previous determination that his request for conscientious objection status was denied,* we had no alternative at that time but to give him a 1A, which we did.

Q. You didn't consider the conscientious objector claim again because it had been denied previously?

A. Yes—[Emphasis added.]

Thus it is clear that the basis for denying I–O status in September 1967 was the previous denial in February-March 1966 when the application was first submitted. And, as already noted, the record is even clearer that this initial consideration in February-March 1966 did not deal with the merits of the application or the nature or sincerity of McGee's beliefs, but was based on the fact that he was a student with a II–S classification, who was not, for that reason, eligible for I–O status. At no time did the board pass on the merits of McGee's claim, even though, as the trial judge found, the application was "considered" by the board in September 1967.

The majority takes the position that "the chairman remembered the Board's dissatisfaction with McGee's showing when his application was examined in early 1966 and that the Board saw no reason to change their minds eighteen months later." However, the chairman did not testify concerning such memory. As noted, he did testify: "I did not say anything at all about his beliefs." Such an evaluation of McGee's beliefs was not necessary in February 1966 because McGee was then ineligible for I–O because of his II–S. Moreover, the chairman's testimony made clear that he did not discuss McGee's case with other members of the board in February 1966. In any event, the record establishes that neither the chairman alone nor the entire board ever considered whether McGee's beliefs were those of a sincere conscientious objector to war.

Such a failure to consider McGee's claim on the merits was a clear error by the local board, which one would think requires setting aside an order for induction. The board's failure was not only a blunder, but it also violated a selective service regulation, which commands it "to receive *and consider* all information, pertinent to the classification of a registrant, presented to it," 32 C.F.R. § 1622.1 (emphasis added), and undoubtedly violated the statute as well. E. g., 50 U.S.C. App. § 455(a) (1):

The selection of persons for training and service * * * shall be made in an impartial manner, under such rules and regulations as the President may prescribe * * *.

Yet, we are told that the board's order should not be invalidated because McGee failed to utilize appellate remedies within the Selective Service System. I do not agree that we are required to invoke the doctrine of exhaustion in this case. It is true that *McKart, supra,* contains strong indications, quoted by the majority, that even the limited failure to exhaust present here may sometimes be fatal. But I do not read that case as necessarily and invariably preventing the defense of invalid classification when the registrant did give all the facts to the local board, especially where the record indicates that the local board applied no "expertise" in its ultimate decision and actually did not consider the classifi-

cation on the merits at all. Compare *McKart, supra,* 395 U.S. at 198 n. 16, 89 S.Ct. 1657. The language of Glover v. United States, 286 F.2d 84, 90–91 (8th Cir. 1961), may appropriately be applied to McGee's I–O claim:

> We adhere to the general rule as to the necessity for exhaustion of administrative remedies in order to obtain a judicial review, and are of the opinion that such rule is generally applicable and usually necessary. However, we are of the view that such general rule is not absolute, inflexible and without exception, but that it is to be relaxed only under extremely exceptional and unusual circumstances. The factual situation presented in this case is appropriate for and requires the relaxation of such rule.

Cf. Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 825 (2d Cir. 1967).

The facts as to McGee's I–O claim are sufficiently unusual to allow us properly to depart from the exhaustion doctrine: McGee presented a strong case for a I–O classification; his local board did not require a personal interview as a prerequisite for processing such a claim; McGee's file contains no information reasonably contradicting his claim; the board chairman inaccurately thought that a letter in support of McGee advised the board that McGee would not accept a I–O; and when the board did "consider" the application, it dismissed it on the inaccurate assumption that the claim had already been rejected on the merits.

Finally, and perhaps most important, the failure of the local board to consider McGee's claim on the merits could not have been called to the attention of an appeal board because McGee could not know about that error and nothing in the record would disclose it. It is true that the appeal board might have reversed the denial of a I–O classification to McGee simply because it thought that he had made out a sufficient case. But that should not be dispositive in deciding whether to apply the exhaustion doctrine

here. The appeal board might also have regarded the case, on the record as then known, as a close one which could go either way on the facts. Accordingly, even though review by the appeal board is *de novo,* the balance might have been tipped either way by a desire not to set aside the action of a local board. In such a case, a fair determination of the claim on the merits by the local board would be crucial. And, of course, that is precisely what McGee did not get. In Knox v. United States, 200 F.2d 398, 402 (9th Cir. 1952), the Ninth Circuit met the argument that a *de novo* review by an appeal board cured the failure of the local board to consider evidence supporting a claim of conscientious objection. The court rejected that contention as follows:

> Classification by the local board is an indispensable step in the process of induction. The registrant is entitled to have his claims considered and acted upon by these local bodies the membership of which is composed of residents of his own community. An underlying concept of the Selective Service System is that those subject to call for service in the armed forces are to be classified by their neighbors—people who are in a position to know best their backgrounds, their situation and activities.

This language in *Knox* has been cited with approval by the Ninth Circuit, most recently in Welsh v. United States, 404 F.2d 1078, 1083 (9th Cir. 1968), cert. granted, 396 U.S. 816, 90 S.Ct. 53, 24 L. Ed.2d 67 (1969), as well as by our own, Mintz v. Howlett, 207 F.2d 758, 762 (2d Cir. 1953), although we distinguished the latter case in United States v. Corliss, 280 F.2d 808, 816–818 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed. 2d 105 (1960) (claim of procedural unfairness but not failure to consider on merits).

It is true that there are compelling reasons behind the exhaustion doctrine, and I do not suggest that the requirement be cast aside when the registrant ignores

the local board altogether and gives it no facts at all. Nor is it necessary in this case to resolve the issue whether failure to appeal denial of a I–O claim should generally be fatal at a subsequent criminal trial to the defense of invalidity of a I–A classification, a question which has recently split the Ninth Circuit, Lockhart v. United States, 420 F.2d 1143 (9th Cir. 1969) (*in banc*) (8–2); cf. United States v. Palmer, 223 F.2d 893 (3d Cir.) (*in banc*) (4–3), cert. denied, 350 U.S. 873, 76 S.Ct. 116, 100 L.Ed.2d 772 (1955). I would hold only that the exhaustion doctrine need not be inexorably applied when the basic error of the local board could not be disclosed by the appeal, and should not be invoked when the registrant did give all of the pertinent information to the local board and it never passed upon the merits at all. On this record, McGee's failure to appeal from the board's I–A classification should not be fatal, and the exhaustion doctrine should not be applied to McGee. I would hold that he should have been classified I–O, and would set aside the conviction on Count 1.

The majority opinion had no occasion to consider the convictions on Counts 2 and 3, and did not find it necessary to deal with Count 4. However, since I would reverse the conviction on Count 1, it does seem necessary for me to consider the other counts, albeit very briefly.

Count 2 charged McGee with failing to report for his pre-induction physical examination in October 1967, after he had been reclassified I–A. It is undisputed that McGee did not report. However, he argues that had he received the I–O classification to which he was entitled, his failure to report could not constitute a crime. This contention is essentially correct. The Order to Report (SSS Form 223) which was sent to McGee by his local board quite clearly indicates to a I–O registrant that failure to report for a physical examination would not subject him to fine and imprisonment, as it would I–A and I–A–O registrants, and indeed would have no effect at all on his obligation to perform civilian work.[1] Under those circumstances, the notice to a I–O registrant to report for a physical examination is for his benefit and is not a "duty required of him" under 50 U.S.C. App. § 462(a). See United States v. Mendoza, 295 F.Supp. 673, 683 (E.D.N.Y. 1969); United States v. Walsh, 279 F. Supp. 115, 118–119 (D.Mass.1968). Cf. Shoemaker v. United States, 413 F.2d 274, 275 (9th Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969).

---

1. The Order to Report (SSS Form 223) states:

To Class I–O Registrants:

This examination is given for the purpose of determining whether you are qualified for military service. If you are found qualified, you will be available, in lieu of induction, to be ordered to perform civilian work contributing to the maintenance of the national health, safety or interest. If you fail to report for or to submit to this examination, you will be subject to be ordered to perform civilian work in the same manner as if you had taken the examination and had been found qualified for military service. There is a sharp distinction in the advice the Form gives to a Class I–A and I–A–O registrant; he is told that:

If you fail to report for examination as directed, you may be declared delinquent and ordered to report for in-

duction into the Armed Forces. You will also be subject to fine and imprisonment under the provisions of the Universal Military Training and Service Act, as amended.

See also Local Board Memorandum No. 14, reported in S.S.L.R. 2160 (1969), which provides:

3. Action by Local Board Subsequent to Refusal of Its Own Registrants to Submit to Armed Forces Examination. * * *

(b) If the registrant is in Class I–O, consider him for all purposes as if he had been physically and mentally examined and found acceptable for military service and process him thereafter in the same manner as any other registrant in Class I–O who has been found acceptable for service after being given an armed forces physical examination. * * *

It is true that *McKart, supra,* 395 U.S. at 203, 89 S.Ct. at 1667, contains dicta suggesting that an invalid classification "would not be a defense today to a prosecution for failure to report for a pre-induction examination." However, *McKart* did not deal with the wrongful denial of a I–O classification, and thus did not consider the option to waive a physical examination which is afforded to registrants holding such a classification. McGee should not be penalized because of the board's error, or deprived of the benefit of selective service procedures designed for conscientious objectors. Therefore, McGee's conviction on Count 2 should also be set aside.

Having thus concluded that because McGee was improperly denied classification as a conscientious objector he should have been acquitted on Counts 1 and 2 of the indictment, there remains a grave issue as to the proper treatment of his convictions on the remaining two counts. These charged that McGee knowingly failed to have in his personal possession a valid Notice of Classification (Count 3) and failed to submit information requested by his local board (Count 4). Appellant also attacks his conviction on these counts, but his arguments—particularly as to Count 3—are not very persuasive.

My problem is of a different sort. Having found error in Counts 1 and 2, I am left with the uneasy feeling that the case might have turned out differently if only Counts 3 and 4 had been involved. All of McGee's offenses grew out of the same operative fact: his policy of noncooperation with his draft board starting in April 1967. Yet because of his earlier request, he was entitled to be classified I–O. If he had been so classified in September 1967—when he should have been—there is at least doubt that he would have become involved with the criminal law at all. It is true that he

then would have been liable for civilian alternate service and presumably would have been ordered to report for it; we simply do not know whether, despite earlier contrary indications,[2] he would have obeyed such an order, which would have recognized the sincerity of his convictions. If he had, it is difficult to believe that prosecution on Counts 3 and 4 would have followed.[3] And, in any event, there is a substantial question whether the jury or the judge would have reacted differently to prosecution of a conscientious objector on Counts 3 and 4. Although the trial judge certainly acted within his authority when he sentenced McGee to concurrent two year terms, he might well have given McGee a shorter prison sentence, or even probation, had he known that McGee should have been classified as a conscientious objector and could not be convicted on Counts 1 and 2. I am aware that it is only

> on rare occasion that we have set aside a conviction on otherwise presumably "good" counts because of defects in the conviction of a defendant on "bad" counts.

United States ex rel. Weems v. Follette, 414 F.2d 417 (2d Cir. 1969); cf. United States v. Bottone, 365 F.2d 389, 394 (2d Cir.), cert. denied, 385 U.S. 974, 87 S.Ct. 514, 17 L.Ed.2d 437 (1966). This case is an appropriate instance for exercising such discretion. See United States v. Barash, 365 F.2d 395, 403 (2d Cir. 1966); United States v. Hines, 256 F.2d 561, 563 (2d Cir. 1958). Doing so would not only eliminate any doubt that McGee was prejudiced on Counts 3 and 4 by the invalid convictions on Counts 1 and 2, it would also afford the Government an opportunity to consider whether it still wishes to press the prosecution on Counts 3 and 4 against this conscientious objector and divinity student.

Accordingly, I would reverse the convictions on Counts 1 and 2 and direct a

---

2. *Cf.* majority opinion, note 8.

3. Indeed, the Selective Service authorities in this case did not recommend prosecu-

tion on Count 4, even though McGee refused to obey the induction order. Gov't Exs. 39, 40.

judgment of acquittal, and reverse the convictions on Counts 3 and 4 for further proceedings consistent with this dissenting opinion.