**UNITED STATES of America ex rel. Walter WEEMS, Jr., Relator-Appellant,**

v.

**H. W. FOLLETTE, Warden of Green Haven State Prison, Stormville, N. Y., Respondent-Appellee.**

**No. 352, Docket 32938.**

United States Court of Appeals Second Circuit.

Argued Feb. 6, 1969.

Decided July 28, 1969.

Louis L. Hoynes, Jr., New York City, for relator-appellant.

Hillel Hoffman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Stephen Seligman, Deputy Asst. Atty. Gen., on the brief), for respondent-appellee.

Before ANDERSON and FEINBERG, Circuit Judges, and MANSFIELD, District Judge.*

FEINBERG, Circuit Judge:

In 1963, appellant Walter Weems, Jr. was convicted in the New York State Supreme Court, Kings County, on three counts of first degree robbery and was sentenced to concurrent sentences of ten to thirty years on each count. The conviction was upheld by the Appellate Division, People v. Weems, 23 A.D.2d 701, 258 N.Y.S.2d 231 (2d Dept. 1965), and the Court of Appeals, 17 N.Y.2d 598, 268 N.Y.S.2d 352, 215 N.E.2d 527 (1966).[1]

Thereafter, Weems petitioned for a writ of habeas corpus in the United States District Court for the Southern District of New York. In October 1968, that court denied the writ, Charles M. Metzner, J., and this appeal is from that denial. For reasons set forth below, we affirm.

Appellant's claim is that his conviction cannot stand because it was based on the evidentiary use against him of stolen clothing which was obtained in an allegedly illegal search and seizure in his apartment. In the court below, as well as on appeal in the state courts, appellant was found to have waived this claim by making only a general objection at trial to the admission of the clothing into evidence, rather than by moving under sections 813–c and 813–d of the New York Code of Criminal Procedure for its suppression at or prior to trial. The question whether Weems waived his right to make a federal constitutional claim by failure to follow state procedures presents difficult issues. See, e. g., United States ex rel. Bruno v. Herold, 408 F.2d 125 (2d Cir. 1969); cf. Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). However, after oral argument we concluded that because the sentences on all three counts were concurrent it might not be appropriate to reach those issues if the clothing in question affected only one of the three counts. Accordingly, we called this to the attention of counsel, with an invitation to address themselves to the effect of these circumstances. They have done so, and we conclude that consideration of the underlying constitutional issues is not called for.

We have often followed the rule in this circuit "that a defendant may not complain of error on one count when he receives concurrent sentences on several counts," United States v. Costello, 381

* Of the Southern District of New York, sitting by designation.

1. Appellant was also convicted on two counts of assault in the second degree with intent to commit rape, but those counts were reversed by the Court of Appeals.

F.2d 698, 700 (2d Cir. 1967), citing Lawn v. United States, 355 U.S. 339, 359, 362, 78 S.Ct. 311, 2 L.Ed.2d 721 (1958); indeed, we have characterized the rule as "familiar." United States v. Youngblood, 379 F.2d 365, 367 (2d Cir. 1967); see, e. g., United States v. Marino, 396 F.2d 780 (2d Cir. 1968) (per curiam); United States v. Scandifia, 390 F.2d 244, 250 (2d Cir. 1968). It is true that on rare occasion we have set aside a conviction on otherwise presumably "good" counts because of defects in the conviction of a defendant on "bad" counts. See United States v. Barash, 365 F.2d 395, 403 (2d Cir. 1966); cf. United States v. Hines, 256 F.2d 561, 563 (2d Cir. 1958). But Barash was an extreme case; convictions on 24 of 26 counts were reversed on appeal. In Hines, appellant had been convicted on three separate counts of possessing, forging and uttering a stolen Treasury check. Criticizing the "concurrent sentence" doctrine of Lawn v. United States, supra, this court held that it had the power to consider an attack on only the one count relating to possession of the check if

> the nature of the error committed below or other circumstances suggest that the accused might have received a longer sentence than otherwise would have been imposed, or that he had been prejudiced by the results of the proceedings.

We went on to reverse the conviction on that one "bad" count and vacated the sentences on the other two counts, but only for the purpose of resentencing. We have since recognized this gloss on the Lawn rule in United States v. Bottone, 365 F.2d 389, 394 (2d Cir.), cert. denied, 385 U.S. 974, 87 S.Ct. 514, 17 L. Ed.2d 437 (1966). Nevertheless, we accepted the argument there that the "good" counts should stand, noting that in doing so:

> we would not wish to be understood as giving all-out obeisance to the validation of concurrent sentences by the presence of one or more good counts [citing Lawn]; despite frequent reliance on this principle where appropriate, we adhere to Judge Clark's statement [in Hines] * * *. But this is not such a case.

Even more recently, the Supreme Court has examined the concurrent sentence doctrine in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (U.S. 1969). The Court stated that the rule is not a jurisdictional bar to consideration of an attack on a "bad" count and threw some doubt on the continued strength of the doctrine. However, we do not read the Court's opinion as preventing use of the rule altogether. The opinion in Benton stated, at 791, 89 S.Ct. at 2060:

> It may be that in certain circumstances a federal appellate court, as a matter of discretion, might decide (as in [Hirabayashi v. United States, 320 U. S. 81 (1943)]) that it is "unnecessary" to consider all the allegations made by a particular party. The concurrent sentence rule may have some continuing validity as a rule of judicial convenience. [Footnote omitted.]

Moreover, the Court indicated that there was less objection to use of the doctrine in connection with a collateral attack on a conviction, as in this case, as distinguished from a direct appeal, 395 U.S. at 793 n. 11, 89 S.Ct. 2056. As indicated above, the state courts have never ruled on the merits of the constitutional issue appellant raises, and the question whether he has waived it by bypassing state procedures or as a matter of deliberate trial strategy is difficult. In view of our past precedents and the allowable discretion we find still exists for us in this case under Benton, we believe that it is appropriate to avoid decision of the constitutional issues if we fairly conclude that appellant was not prejudiced at his trial by the assumed error in the state court proceeding. Accordingly, we turn to that question, using the Hines statement as an analytical tool.

Appellant was convicted on three separate counts of robbery in the first degree, receiving on each an indeterminate

sentence of from ten to thirty years, the respective minimum and maximum fixed by the statute.[2] There is no basis in the record for concluding that his sentence on any of the three counts was longer or that his eligibility for parole will be decreased because of an improper conviction on one count. Appellant was tried for crimes arising out of three separate incidents which occurred in Brooklyn in less than two weeks in November 1962. According to the state court record, there was evidence from which the jury could properly find that in that period, he entered two dry cleaning stores and a dress shop just before closing time: Kent Cleaners on November 9, Marlowe's Dress Shop on November 14, and Reo Cleaning Store on November 20. In the Kent store, appellant threatened a female employee with a knife and took clothing and money. The employee identified appellant, testifying that "there is no question in my mind" about it. Appellant denied being in the store. In the Marlowe store, appellant engaged in the same conduct, and the employee there threatened testified that she was "sure this is the man." Appellant took money from the cash register, which contained "money in bill form." Appellant denied being in the store. Finally, in the Reo store, after appellant threatened an employee, he took money from the register and three suits and two fur coats. It was the introduction into evidence of this clothing that is the basis of appellant's constitutional claim.

Soon after appellant left the Reo store carrying the suits and coats, he was seen by a police officer who asked him where he had obtained the clothing. Appellant identified himself and told a false story to the officer, who apologized for stopping him. Shortly thereafter, the officer returned to the police precinct and met the threatened employee, who had gone there to complain of the crime. The officer, accompanied by the complaining witness, drove to the apartment house where appellant lived, found him in the hallway, and arrested him immediately after identification by the witness. The officer then went up to appellant's apartment and found the suits and fur coats. There is a dispute as to whether there was consent to the search. When arrested, appellant had an envelope in his pocket marked "Reo Stores, Number 31," which contained a store and cash report. Appellant also had cash register tapes and $31 in cash. Appellant's trial testimony was that he had bought the clothing from a stranger and that the Reo cash receipts and tapes were taken from that clothing, not from his pocket.

From all of the above, we conclude, in the words of United States v. Bottone, *supra*, 365 F.2d at 394, that if the clothing had not been admitted into evidence at all, we "have not the slightest question that the jury would have properly convicted" appellant on all the robbery counts, *a fortiori* on the two counts charging the robbery of the Kent and Marlowe stores. As to those, the evidence was clearly separable, involving different locations, dates and eye witnesses who identified appellant and described the robbery. The trial was not long or complicated. While the clothing added strength to the prosecution case on the Reo count, it was hardly necessary even there. Appellant was seen with the clothing on the street, an employee testified that he took it, his statement on the street to an officer was false, and on his arrest—which was proper—he had a Reo report and register tape. On all the robbery counts— but particularly on those involving the Kent and Marlowe stores, which appellant denied entering on the dates in question—the issue was the simple one of appellant's credibility, which the jury could easily resolve. Whatever might be the proper course were the Reo count alone before us, we do not feel that the convictions on the other two counts were in any appreciable way tainted. Cf. Harrington v. California, 395 U.S. 250,

---

**2.** N.Y. Penal Law of 1909, McKinney's Consol.Laws, c. 40, §§ 2124–2125, super- seded effective Sept. 1, 1967, by N.Y. Penal Law § 160.15.

89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Accordingly, since we have concluded that we should not disturb appellant's continued state custody on the other two counts upon which he was convicted, regardless of the merits of his claim on the Reo count, his habeas petition was properly denied.

Judgment affirmed.