**Vincent Francis McGEE, Jr., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 484, Docket 71-1840.**

United States Court of Appeals,
Second Circuit.

Argued March 6, 1972.

Decided April 18, 1972.

Alan H. Levine, New York City (Leon Friedman, and New York Civil Liberties Union, New York City, of counsel), for appellant.

Peter Truebner, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the S. D. of N. Y., and John W. Nields, Jr., Asst. U. S. Atty., of counsel), for appellee.

Before FRIENDLY, Chief Judge, TIMBERS, Circuit Judge, and JAMESON, District Judge.*

FRIENDLY, Chief Judge:

This appeal is an epilogue to the proceedings detailed in the previous opinions of this court and the Supreme Court affirming Vincent Francis McGee's conviction on four counts of violating the Selective Service Act of 1967, 50 U.S.C. App. § 451 et seq. These were refusing to submit to induction (Count 1), failing to report for a physical examination (Count 2), failing to possess a valid notice of classification (Count 3), and failing to return a current information questionnaire to his local board (Count 4). See 426 F.2d 691 (2 Cir. 1970), aff'd, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). It suffices here to say that this court held and the Supreme Court agreed that although McGee had presented a valid claim to his local board for exemption as a conscientious objector, his conviction on Count 1 had to be affirmed because of his failure to appeal the local board's 1–A classification; that in consequence the convictions on Counts 2 and 3 should be affirmed without any need to consider what the result would be if the 1–A classification were improper; and that "[i]n light of the concurrent sentences [of two years imprisonment] there is no need to consider the conviction under Count 4 under the circumstances here presented," 426 F.2d at 700.

Before making the motion giving rise to this appeal, McGee, who had remained at liberty during the appellate proceedings, moved pursuant to 28 U.S.C. § 2255 to vacate the conviction and sentence under Count 1, charging refusal to submit to induction, on the ground that he had been unlawfully declared delinquent and accelerated for induction. See Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). The district court granted the motion. McGee then moved, on June 29, 1971, purportedly pursuant to 28 U.S.C. §§ 1651 and 2255, to set aside the judgments and sentences under Counts 2, 3 and 4 or, in the alternative, for a new trial on these counts under F.R.Cr.P. 33 or, in the alternative, to suspend or reduce his sentence under these counts and permit him to serve his sentence on probation, F.R.Cr.P. 35. The application was supported by an impressive collection of letters from officials of Union Theological Seminary where McGee had studied, another distinguished educator, business men with whom McGee had worked as executive director of Business Executives Move for Vietnam Peace (BEM), a United States Senator, and a Representative. All attested to McGee's deep personal sincerity, his high character and principles, and his determination to work in an orderly

* Of the United States District Court for the District of Montana, sitting by designation.

and constructive manner to end this country's involvement in Vietnam. The judge entertained the motion but denied it on July 13, 1971, in a brief ruling set forth in the margin.[1] McGee had begun serving his sentence on July 6. On this appeal only the denial of the motion to reduce sentence is pressed. McGee contends that this unexplained refusal was an abuse of discretion.

■ We have only recently reaffirmed that "[a] sentencing judge has very broad discretion in imposing any sentence within the statutory limits . . ." United States v. Sweig, 454 F.2d 181, 183–184 (2 Cir. 1972). See also Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). We have no intention of deviating from this general principle. Appellate courts, though, have gone so far as to scrutinize the information considered by the trial judge in the sentencing process. In Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), the Court deemed unconstitutional a sentencing proceeding in which a "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." See also United States v. Malcolm, 432 F.2d 809, 815–816 (2 Cir. 1970). Similarly, the Court has only recently affirmed an appellate order vacating a sentence "founded at least in part upon misinformation of constitutional magnitude"—specifical-

ly, two prior convictions unconstitutional in light of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). United States v. Tucker, *supra*, 404 U.S. at 447, 92 S.Ct. at 589. Implicit in these decisions is the proposition that a trial judge, in exercising his sentencing discretion, may not rely significantly upon false evidence of prior convictions or upon evidence of prior convictions which were illegally obtained.

We believe that this case presents a problem not without some analogy. We deal here with a conviction on four counts which were prosecuted in one trial and upon which identical concurrent sentences were simultaneously imposed. However, the conviction under one of those counts has now been determined to have been unlawful. The trial judge's original sentencing determination with respect to counts 2 through 4 could have been influenced by appellant's conviction under count 1—just as evidence of a prior conviction might influence a sentencing judge on a subsequent one.[2] If such were in fact the case, appellant's initial sentences under counts 2 through 4 would require reconsideration.

In *Burke* and *Tucker*, it was plain from the record that "the sentencing judge gave specific consideration to the [defendant's] previous convictions before imposing sentence upon him." United States v. Tucker, *supra*, at 447, 92 S.Ct. at 592 (footnote omitted). See also Townsend v. Burke, *supra*, 334 U.S. at 739–740, 68 S.Ct. at 1252. Here it is im-

---

1. The defendant's and/or petitioner's motions to set aside the judgment of conviction on Counts II, III and IV of the indictment and for an order pursuant to Fed.R.Crim.P. 33 for a new trial are denied; and the motion for an order pursuant to Fed.R.Crim.P. 35 reducing the sentence heretofore imposed are denied in the exercise of our discretion.

    The absence of an affidavit from McGee, noted in item (6) (b) of the dissent is readily explained. The plan was for McGee to appear personally at the July 6 hearing, but on that morning he was ordered to surrender to begin serving his sentence.

2. The dissent suggests a number of decisions as being more appropriate analogies to this case than United States v. Tucker, *supra*. However, one crucial factor distinguishes those decisions from the instant case, namely, the absence of any indication that the information relied upon by the sentencing judge was erroneous. To the contrary, the opinions in three of those decisions, Williams v. New York, Williams v. Oklahoma, and United States v. Schipani, expressly indicate that the correctness of the evidence used was not contested. It is the use of erroneous information in the original sentencing process that makes *Tucker*, and also *Burke*, more appropriate analogues here.

possible to determine from the judge's remarks in imposing sentence, set out in the margin,[3] whether he was at least in part influenced by the conviction under count 1 in setting sentence on counts 2 through 4. However, certain factors indicate that this is quite probable. The trial judge imposed concurrent sentences of equal length, two years, on all four counts. Yet an examination of the prior opinions in this case will show that count 1 was always regarded as the most serious of the four. See 426 F.2d at 705 (dissenting opinion of Feinberg, J.). Indeed, the affidavit in support of the motion for a reduction of sentence alleged that "it has apparently been government policy not to prosecute registrants for the selective service violations alleged in Counts II, III, and IV in the absence of a refusal of induction." Counsel supports this, at least in part, with a citation to an official publication of the Selective Service System, Legal Aspects of Selective Service 47 (1969), which states that, in the absence of an unlawful refusal to register or to submit to induction, other offenses are usually processed administratively and do not become the basis for criminal prosecution. The affidavit of the Assistant United States Attorney

did not effectively deny this, saying only that he "knows of no such policy." [4] In sum, absent some explicit indication to the contrary by the trial judge at the time of sentencing, it is not unreasonable to conclude that the initial sentencing decision with respect to counts 2 through 4 may have been to some extent influenced by the conviction on the far more serious count 1.[5] Cf. United States v. Barash, 365 F.2d 395, 403 (2 Cir. 1966).

When the invalidity of the conviction on one count which may have influenced the sentence becomes apparent on an appeal, whether on direct or collateral attack, the proper course is usually to vacate the sentences and remand for resentencing on the valid counts without consideration of the invalid one. Compare United States v. Tucker, *supra*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592. Here, however, because of the Rule 35 motion, the trial judge has already had at least an opportunity to reconsider the sentences on counts 2 through 4 while aware of the invalidity of the conviction under count 1, and the Government says this should end the matter. But we think that, in the particular circumstances here presented, some expla-

---

3. The judgment of the Court is that you be placed in the custody of the Attorney General for a period of two years on each of the four counts of which you have been convicted, and each sentence to run concurrently one with each other.

4. What is important is not what the particular assistant knows, but what the policy of the Department of Justice was—something which is surely ascertainable. Cf. Redmond v. United States, 384 U.S. 264, 86 S.Ct. 1415, 16 L.Ed.2d 521 (1966). The dissent relies upon statements made at the July 6, 1971, hearing on the Rule 35 motion concerning possible recent changes in prosecutorial policy in light of Gutknecht v. United States, *supra*, and the new lottery draft system. But when, as here, we are concerned with the effect of McGee's unlawful conviction under count 1 on the sentence imposed on counts 2 through 4, the issue is not the present prosecutorial policy but the policy that existed at the time McGee was prosecuted and convicted. In any event, the district

judge did not determine what the prosecutorial policy in fact was, either at the time McGee was prosecuted or now; at the conclusion of the conflicting arguments of counsel on this subject, the judge himself stated, "We're talking on possibilities, of course."

5. We do not mean to suggest that conviction on one count, subsequently held invalid, always influences the sentencing on other counts prosecuted simultaneously. Instances—illustrative only—where the contrary would be clear are where all counts are for the same acts, cf. United States ex rel. Weems v. Follette, 414 F.2d 417 (2 Cir. 1969), cert. denied, 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 131 (1970) ; where the one count is for a less serious offense than the others ; or where the one count is for a substantive offense and there is also a conspiracy count, cf. United States v. Febre, 425 F.2d 107, 113–114 (2 Cir.), cert. denied, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970).

nation was needed for allowing the original sentences on the valid counts to stand unaltered. Courts, which have so rightly imposed a requirement of the statement of reasons on local draft boards, *e. g.*, United States v. Lenhard, 437 F.2d 936 (2 Cir. 1970); United States v. Haughton, 413 F.2d 736 (9 Cir. 1969); United States v. Andrews, 446 F.2d 1086 (10 Cir. 1971) (and cases cited therein), and on administrative agencies, Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093, 1099–1100 (1970), are not exempt from this duty in appropriate circumstances. True, as we noted at the outset, sentencing is an area in which the trial judge has "very broad discretion," and he is generally under no obligation to give reasons for his sentencing decisions. Compare, *e. g.*, Gollaher v. United States, 419 F.2d 520, 530 (9 Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969). In this particular case, though, we have determined that it is not improbable that the initial sentencing process with respect to the valid counts was to some extent affected by the conviction on the far more serious count 1, which was illegally brought. To purge this possible taint after the fact on a Rule 35 motion, we believe the trial judge should either have reduced the sentences on counts 2 through 4 or have given at least a summary explanation of his reasons for declining to do so,[6] *cf.* North Carolina v. Pearce, 395 U.S. 711, 725–726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). If the original sentences on the valid counts are to stand, we think the latter is the minimum necessary to impart integrity to those sentences,[7] where the trial judge has been spared the more extensive task of resentencing appellant on the valid counts.[8]

Accordingly, the order is vacated and the cause remanded for further proceedings consistent with this opinion. Since McGee is serving his sentence, this matter should be handled with the judge's usual expedition. The mandate shall issue forthwith.

TIMBERS, Circuit Judge (dissenting):

Until today's majority decision, our Court has never reversed, vacated or modified a discretionary order of a trial judge on a Rule 35 motion to reduce sentence. Nor has the Supreme Court ever sanctioned the disturbing of a trial judge's discretion on such a motion.

6. It is true, as the Government argues, that in substance McGee's conviction on all counts was grounded on what we characterized in our prior opinion as his "stiff-necked refusal to have any dealings with the Selective Service System," 426 F.2d at 699. The Government contends that a two-year sentence, although severe, was thus justified as an example to deter other registrants from such conduct, even though, as now appears, there was no unlawful refusal to submit to induction. Whether this consideration in fact motivated the trial judge's actions at the time of either initial sentencing or the motion to reduce, or both, is impossible *to determine from his remarks on those* occasions, see notes 1 & 3 *supra*, and we do not consider that hypothesizing a possible motivation for the trial judge's actions provides sufficient substance to dispel the appearance of possible prejudice with respect to the sentencing on counts 2 through 4. We think this particularly true in light of the apparent government policy of not prosecuting a registrant solely for the violations alleged in those counts, see note 4 *supra*.

7. Despite the suggestion in the dissenting opinion to the contrary, see fn. 21 *infra*, the appellant's brief, see Point II, at 29, and the Government's brief, at 4–5, encompassed the point on which we base our decision.

8. Vacation of an original sentence requires the trial judge to redo the entire sentencing process; a motion to reduce does not compel the trial judge to delve so deeply into his original sentencing decision since, as a practical matter, the issue is only whether he feels sufficiently motivated by the information contained in the moving papers and adduced at any hearing to undertake reconsideration of the existing sentence and ultimately perhaps to alter it. Compare United States v. Ellenbogen, 390 F.2d 537, 543 (2 Cir.), cert. denied, 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968).

The sole issue on this appeal from an order denying a Rule 35 motion to reduce sentence is whether the trial judge abused his discretion. Upon the record before us, I find not a scintilla of abuse. Every indication is to the contrary. While I recognize the commendably limited scope of the majority opinion, I nevertheless do not agree with the judgment vacating the order of the trial judge. I respectfully but emphatically dissent.

The specific question here, in reviewing the trial judge's exercise of discretion in denying the Rule 35 motion to reduce sentence,[1] is whether he took properly into account the setting aside of McGee's conviction on Count 1 (refusal to submit to induction) some 2½ years after he had been sentenced to concurrent two year terms of imprisonment on each of four counts under a statute that provided for a maximum five year term of imprisonment on each count.[2]

Before turning to the facts of record upon which the trial judge's exercise of discretion must be appraised, there can be briefly stated certain fundamental legal principles which I believe should govern this appeal.

First, it is common ground that "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review." United States v. Tucker, 404 U.S. 443, 447 (1972); accord, Gore v. United States, 357 U.S. 386, 393 (1958); United States v. Sweig, 454 F.2d 181, 183–84 (2 Cir. 1972).

Second, absent "undesirable collateral consequences", Benton v. Maryland, 395 U.S. 784, 789 (1969), resulting from a "spill over" of evidence affecting a conviction on a count subsequently reversed or dismissed, our Court has adhered to the concurrent sentence doctrine and has declined to reverse for a new trial or to remand for resentencing where concur-

---

1. In order more precisely to focus upon the sole issue that is before us, it is important to bear in mind what is *not* involved. We are not called upon to review an order denying a motion pursuant to 28 U.S.C. § 2255 *to vacate or set aside a sentence* under Counts 2, 3 and 4, as in United States v. Tucker, 404 U.S. 443 (1972), and Gore v. United States, 357 U.S. 386 (1958) ; such motion was made by McGee, was denied by Judge Murphy and no appeal was taken. Nor are we called upon to review an order denying a motion pursuant to Rule 35, *to correct an illegal sentence* under Counts 2, 3 and 4, as in United States v. Sweig, 454 F.2d 181 (2 Cir. 1972).

We are called upon to review the denial of McGee's motion pursuant to Rule 35 *to reduce sentence*, and that is all. The specific relief requested in this branch of his motion was "an order pursuant to Rule 35 . . . reducing petitioner's sentence of two years imprisonment on each Count of the indictment and permitting him to serve this sentence on *probation*." The District Court of course had no power, once McGee started to serve his sentence on July 6, 1971, to permit him to serve any part of it on probation, United States v. Ellenbogen, 390 F.2d 537, 543 (2 Cir.), cert. denied, 393 U.S. 918 (1968), and Judge Murphy properly did not act on the probation request.

What *is* before us, therefore, is just what the majority has correctly stated:

"On this appeal only the denial of the motion to reduce sentence is pressed. McGee contends that this unexplained refusal was an abuse of discretion." 462 F.2d 245.

These distinctions between the several procedures for attacking sentence are not matters of semantics. They go to the heart of this most important aspect of the administration of federal criminal justice, including the proper relationship between trial and appellate judges in the sphere of sentencing.

2. McGee was indicted, convicted and sentenced under Section 12(a) of the Military Selective Service Act of 1967, 62 Stat. 622, as amended, 50 U.S.C.App. § 462(a) (Supp. V, 1964), for refusing to submit to induction, in violation of § 462 (a) and 32 CFR 1632.14 (Count 1) ; for refusing to report for a physical examination, in violation of § 462(a) and 32 CFR 1628.16 (Count 2) ; for refusing to have in his possession a valid classification notice, in violation of § 462(a) and 32 CFR 1623.5 (Count 3) ; and for refusing to return to his local board a current information questionnaire relevant to his draft status, in violation of § 462(a) and 32 CFR 1641.2(b) and 32 CFR 1641.7(b) (Count 4).

The maximum penalty under each of these four counts is five years imprisonment and/or a $10,000 fine.

rent sentences have been imposed and later one or more, but less than all, counts have been reversed. United States v. Ferrara, 451 F.2d 91, 97 (2 Cir. 1971), cert. denied, 405 U.S. 1032 (1972); United States v. Adcock, 447 F.2d 1337, 1339 (2 Cir.), cert. denied, 404 U.S. 939 (1971); United States v. Coppola, 424 F.2d 991, 995 (2 Cir.), cert. denied, 399 U.S. 928 (1970); United States ex rel. Weems v. Follette, 414 F.2d 417, 420 (2 Cir. 1969), cert. denied, 397 U.S. 950 (1970); cf. United States v. Febre, 425 F.2d 107, 113 (2 Cir.), cert. denied, 400 U.S. 849 (1970).

Third—and of crucial significance on this appeal—we uniformly, and without exception, have refused to disturb a trial judge's exercise of discretion in acting on a Rule 35 motion to reduce sentence. United States v. Jones, 444 F.2d 89, 90 (2 Cir. 1971); United States v. Schipani, 435 F.2d 26 (2 Cir. 1970), cert. denied, 401 U.S. 983 (1971); United States v. Kee Ming Hsu, 424 F.2d 1286, 1291 (2 Cir. 1970), cert. denied, 402 U.S. 982 (1971); United States v. Birnbaum, 402 F.2d 24, 30, and authorities cited at 30 (2 Cir. 1968), cert. denied, 394 U.S. 922 (1969); United States v. Ellenbogen, 390 F.2d 537, 543 (2 Cir.), cert. denied, 393 U.S. 918 (1968). See 8A Moore's Federal Practice ¶ 35.02 [4] (2d ed. 1970); 2 Wright, Federal Practice and Procedure § 588 (1969).

In the light of these controlling legal principles (with which I do not understand there to be any disagreement by the majority), the following are the circumstances which strike me as relevant in appraising the trial judge's exercise of discretion in acting on this Rule 35 motion to reduce sentence:

(1) The judge who acted on the motion to reduce sentence in July 1971 was the same Judge Murphy [3] who had presided over the three day trial of McGee in November 1968, at which McGee had testified at length on his own behalf.[4]

(2) Before imposing sentence on McGee in January 1969, Judge Murphy had ordered a presentence investigation and report; he received and studied the presentence report; he heard counsel for both sides; and he also heard McGee in the exercise of his right of allocution, during the course of which at no time did McGee urge Judge Murphy not to impose a sentence of imprisonment.[5]

(3) By the time of the hearing on the motion to reduce sentence in July 1971, Judge Murphy knew of this Court's 2–1 affirmance on March 31, 1970 of McGee's conviction, 426 F.2d 691, during the course of which we said that "McGee's stiff-necked refusal to have any dealings with the Selective Service System has caused the expenditure of countless hours by prosecutors, grand and petit jurors, and judges of the trial and appellate courts." 426 F.2d at 699.

(4) Judge Murphy also knew in July 1971 that the Supreme Court on May 17, 1971 had affirmed, 8–1, this Court's judgment in an opinion by Mr. Justice Marshall, 402 U.S. 479, during the course of

---

3. By July 1971, Judge Murphy had become a Senior United States District Judge; and at the time of the hearing on McGee's motion to reduce sentence, Judge Murphy was sitting by designation in the District of Connecticut, helping that beleaguered District by trying criminal cases.

4. Trial Transcript 94–143, 183–218 (Nov. 8 and 12, 1968).

5. Sentencing Transcript 290–295 (Jan. 16, 1969).

In a memorandum order of November 17, 1971, Judge Murphy made available the presentence report to McGee's counsel on appeal on the assumption that "his hopeful purpose is to buttress his appeal from our order denying his application to reduce or modify defendant's sentence after the Supreme Court affirmed the conviction (McGee v. United States, 402 U.S. 479 (1971)) and after we vacated the judgment of conviction on Count One on the authority of Gutknecht v. United States, 396 U.S. 295 (1970)."

which the Supreme Court repeatedly referred to McGee's refusal to have any dealings with the Selective Service System: "[T]his hardly changes the picture of a thoroughgoing attempt to sidestep the administrative process", 402 U.S. at 487; "Here the bypass was deliberate and without excuse", 402 U.S. at 488; and, in conclusion, "It remains that McGee's failure to pursue his administrative remedies was deliberate and without excuse. And it is not fanciful to think that 'frequent and deliberate flouting of administrative processes' might occur if McGee and others similarly situated were allowed to press their claims in court despite a dual failure to exhaust", 402 U.S. at 491. Almost immediately following this last statement, there appears in a footnote this reference to the concurrent sentences imposed by Judge Murphy: "The two-year sentences on each of the four counts are to run concurrently, and we decline to disturb the conviction on count IV, a minor offense indeed in comparison to the act involved in count I", 402 U.S. at 491–92 n. 15.

(5) At the time of the hearing on the motion to reduce sentence in July 1971, Judge Murphy of course knew that McGee's conviction on Count 1 had been set aside, with the consent of the government, in the light of Gutknecht v. United States, 396 U.S. 295 (1970),[6] for Judge Murphy himself had signed the order setting aside that conviction on June 14, 1971—exactly one month prior to entry of his order denying McGee's motion to reduce sentence.

(6) Upon receipt of McGee's motion to reduce sentence, Judge Murphy set it down for a hearing (although he was not required to do so). A hearing was held at Hartford on July 6, 1971. It lasted approximately one-half hour. Among the matters specifically referred to at this hearing were the following:

(a) Judge Murphy informed McGee's counsel that he had read his papers "and all of the letters,"[7] having taken the papers home with him prior to the hearing.[8]

(b) Judge Murphy noted that McGee's Rule 35 motion to reduce sentence *was not supported by an affidavit by McGee*, as is usual "on motions such as this . . . the affidavit is made by the defendant."[9]

(c) Judge Murphy inquired, referring to the four counts upon which McGee had been convicted, whether his recollection was correct "that Congress has made each of those violations subject to the same penalty . . . that Congress has fixed a maximum of five for each?" McGee's counsel replied, "Absolutely."[10]

(d) Judge Murphy heard counsel for both sides at considerable length on the claim by McGee's counsel that

"[I]t has generally been government policy, including Selective Service policy, not to prosecute on the so-called minor

---

6. *Gutknecht* was decided by the Supreme Court on January 19, 1970—more than two months before our decision in *McGee*, 426 F.2d 691, and sixteen months before the Supreme Court's decision in *McGee*, 402 U.S. 479.

7. Rule 35 Motion Transcript 2 (July 6, 1971) (hereinafter, "Motion Transcript").

This transcript was not included in the record on the instant appeal. It was obtained by the Court subsequent to the argument. See note 21 *infra*.

8. *Id.* at 10.

9. *Id.* at 9.

10. *Id.* at 3.

counts in the absence of the so-called major count." [11]

As to this, McGee's counsel conceded during argument before Judge Murphy that

"Whether or not it is unexceptional government policy, I make no representation. It could be that in other cases the government, for one reason or another, has chosen to prosecute in the absence of a refusal of induction." [12]

Government counsel, responding to the argument of McGee's counsel regarding the so-called minor counts, stated that

"[S]ince the decision of the Supreme Court in [Gutknecht v. United States], which served as a basis for invalidating the conviction on count 1, the government is almost mandated to prosecute on these minor counts, because now again with the new lottery system it may be that a man can violate various provisions of the law all along and yet never be called for induction because of his high lottery number." [13]

And, finally on this issue, Judge Murphy observed that

"I think Mr. Truebner (government counsel) sort of put his finger on it. It sounds logical that if that was the policy in '69, it couldn't possibly be the policy now under [Gutknecht]." [14]

(e) Judge Murphy also fully heard McGee's counsel in support of his argument that "[T]here is no basis in fact for the local board's determination that [McGee] was not qualified for CO status." [15]

(f) Finally, Judge Murphy called for a copy of the original sentencing transcript,[16] reserved decision on the motion to reduce sentence [17] and a week later denied the motion "in the exercise of our discretion." [18]

On this record, I find no abuse of discretion whatsoever on the part of Judge Murphy in denying the motion to reduce sentence. He did all and more than has ever been required of a federal district judge in exercising his discretion on such a motion. I find no impermissible factors having been considered; on the contrary, he took into account all relevant facts and circumstances which were brought to his attention, including the setting aside of McGee's

11. *Id.* at 3. Counsel for both sides, as well as Judge Murphy, referred to the Selective Service publication, Legal Aspects of Selective Service 47 (1969). See majority opinion, 462 F.2d 246.

With respect to Count 3 of the indictment in the instant case (refusing to have in his possession a valid classification notice), it should be noted that at page 47 of the publication referred to above a distinction is drawn between registrants who turned in "draft" cards to various public officials and were not prosecuted under Section 12(a) of the Military Selective Service Act of 1967 but were processed administratively by the local boards—"*as contrasted to those who burned cards*" (Italics added). In the instant case, as both our Court, 426 F.2d at 693, and the Supreme Court, 402 U.S. at 481, noted, McGee wrote to the President of the United States enclosing charred remnants of his draft cards.

12. Motion Transcript 4.

13. Motion Transcript 14. Compare majority opinion, 462 F.2d 246 n. 4.

14. Motion Transcript 16.

15. *Id.* at 7. It is clear that McGee's "absence of a basis in fact" claim was fully presented to Judge Murphy at the critical time with which we are concerned on this appeal, i. e. the argument of the motion to reduce sentence.

16. Motion Transcript 15. Counsel informed us at the time of argument of the appeal that the original sentencing transcript had been furnished to Judge Murphy.

17. Motion Transcript 16.

18. Majority opinion, 462 F.2d 245 n. 1, *supra.*

conviction on Count 1—the factor upon which the majority opinion appears to turn.

The essential reasons for my differing with the conclusion reached by the majority may be summarized as follows.

First, in order to determine whether the trial judge properly exercised his discretion, or abused it, in denying the motion to reduce sentence, I believe that we must focus upon the record before the trial judge *in July 1971* when he heard and decided the motion to reduce sentence—not upon what was in his mind *in January 1969* when the original sentence was imposed. The majority opinion appears to focus upon the "initial sentencing process" and "whether he was at least in part influenced by the conviction under count 1 in setting sentence on counts 2 through 4" 462 F.2d 246, 247. All else aside, I think it is wholly unrealistic to expect a trial judge on remand to say what went on in his mind more than three years ago when he imposed sentence.[19]

Second, I am not persuaded by the majority's analogy to a case (United States v. Tucker, *supra*) where the sentencing judge gave specific consideration to two prior convictions of a defendant (15 and 7 years before sentencing) which subsequently (17 years after sentencing) were found to have been invalid under Gideon v. Wainwright, 372 U.S. 335 (1963). With deference, I suggest there is a more apt analogy to those cases where courts have held that a sentencing judge properly exercised his discretion in considering at the time of imposition of sentence such matters as: crimes of which a defendant had been acquitted, United States v. Sweig, 454 F.2d 181 (2 Cir. 1972); crimes with which a defendant had been charged but which had been

dismissed without an adjudication on the merits, United States v. Doyle, 348 F.2d 715, 720–21 (2 Cir.), cert. denied, 382 U.S. 843 (1965); evidence obtained in violation of the Fourth Amendment, United States v. Schipani, 435 F.2d 26 (2 Cir. 1970), cert. denied, 401 U.S. 983 (1971); hearsay evidence not admissible at trial, Williams v. Oklahoma, 358 U.S. 576, 584–86 (1959); and prior crimes for which a defendant had not been tried, together with hearsay evidence, Williams v. New York, 337 U.S. 241 (1949).[20]

Third, whether Judge Murphy properly exercised his discretion in denying the motion to reduce sentence in July 1971 should be determined in the light of *all* relevant factors (which I have attempted to summarize above) and not *solely* on the basis of whether he took properly into account the setting aside of McGee's conviction on Count 1 (which I agree was one of the factors to be taken into account).

Coming to the majority's mandate to the trial judge on this Rule 35 motion:

". . . we believe the trial judge should *either* have reduced the sentences on counts 2 through 4 *or* have given at least a summary explanation of his reasons for declining to do so . . . ." 462 F.2d 247 (Italics added).

As for the second alternative, of course this will be simple for Judge Murphy to comply with; and the majority has made clear that compliance with this alternative will fully satisfy the mandate. "If the original sentences on the valid counts are to stand, we think the latter is the minimum necessary to impart integrity to those sentences . . ." *Id.*

It is with the first alternative that I most emphatically disagree. To say that ". . . on a Rule 35 motion, we believe

19. At the hearing in July 1971 on the motion to reduce sentence, Judge Murphy stated candidly that "I have a blank recollection" as to what McGee said at the time of sentencing. Motion Transcript 15. I think the recollection of most trial judges would be the same 2½ years after the event.

20. See Judge Hays' summary of these authorities and the rationale for the rule that such matters may and should be considered by the sentencing judge in the exercise of his "very broad discretion in imposing any sentence within the statutory limits." United States v. Sweig, *supra*, at 183–84.

the trial judge should . . . have reduced the sentences on counts 2 through 4," even when stated as an alternative, constitutes to that extent an attempt at appellate review of sentencing. With deference I must say that in my view that is none of our appellate business. To some trial judges, such an alternative mandate might be taken as a nudge to reduce sentence. I do not believe that Judge Murphy is one to be easily nudged.

Paraphrasing Mr. Justice Blackmun's dissent in United States v. Tucker, *supra*, 404 U.S. at 452:

"On remand the case presumably will go once again to Judge [Murphy], and undoubtedly the same sentence once again will be [adhered to]. Perhaps this is all worthwhile and, if so,

I must be content with the Court's disposition of the case on general principles. I entertain more than a mild suspicion, however, that this is an exercise in futility, that the Court is merely marching up the hill only to march right down again, and that it is time we become just a little realistic in the face of a record such as this one." (Blackman, J., dissenting in an opinion in which The Chief Justice joined).

I would affirm Judge Murphy's denial of the Rule 35 motion to reduce sentence on the ground that there was no abuse of discretion and the sentence, well within statutory limits, is not subject to appellate review.[21]

21. I am disturbed by certain aspects of appellate practice by which the decision in this case has been reached.

First, in critical respects the record upon which this case was briefed and argued before us was incomplete. For example, the transcript of the July 6, 1971 hearing before Judge Murphy on the motion to reduce sentence was not before us at the time of argument. It should not be necessary for a judge of this Court to have to track down in the back woods of Vermont such a vital portion of the record. If this appeal had been prosecuted on an expedited schedule, it would have been one thing; but the record shows that it proceeded at a leisurely pace, counsel for appellant having obtained three successive monthly extensions for the filing of his main brief and a further extension for his reply brief. Under the circumstances, I see no justification for appellant's counsel not having such a vital portion of the record before us at the time of argument, *assuming* that he intended the Court to decide the appeal on the issue upon which the majority opinion turns. This leads me to the other aspect of appellate practice which disturbs me.

Second, the majority opinion appears to turn on an issue which was neither briefed nor argued before us, i. e. whether Judge Murphy abused his discretion in de-

nying the motion to reduce sentence without either having reduced the sentences on counts 2 through 4 in view of the setting aside of the conviction on count 1, or having given an explanation for declining to do so. Certainly, the government did not understand this to be appellant's claim, for it states in its brief that "Appellant quite properly does not argue that the setting aside pursuant to the Government's consent, of the conviction on Count I (failure to submit to induction) requires a reduction of his sentence on the other counts." (Government Brief 3, footnote*). And I think that appellant's oral argument and well prepared brief may fairly be said to have been chiefly concerned with the contention that Judge Murphy abused his discretion in failing to give weight to the character and actions of McGee and the statements of those who wrote in his behalf, plus the argument that other judges have granted probation in similar cases—certainly not grounds for our finding an abuse of discretion.

In short, I think it is unfortunate that a decision of first impression—where our Court for the first time is vacating a discretionary order of a trial judge on a motion to reduce sentence—should be based on a record which is incomplete and should turn on an issue neither briefed nor argued before us.