**Karen STEAD, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

No. 01–10354–BC.

United States District Court, E.D. Michigan, Northern Division.

Jan. 10, 2005.

Lewis M. Seward, Seward, Tally, Bay City, MI, for Plaintiff.

Robert W. Haviland, U.S. Attorney's Office, Flint, MI, for Defendant.

*OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING MATTER TO THE COMMISSION FOR FURTHER PROCEEDINGS*

LAWSON, District Judge.

The plaintiff, Karen Stead, filed the present action on November 8, 2001 seeking review of the Commissioner's decision denying the plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits under Titles II and XVI of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and award her benefits. The defendant filed a motion for summary judgment requesting affirmance of the Commissioner's decision, to which the plaintiff replied. The plaintiff then filed a supplemental motion concerning the Administrative Record because certain portions of the testimony of the medical consultant were determined to be "inaudible" and not transcribed. The defendant opposed the relief sought by the plaintiff. Magistrate Judge Binder filed a report and recommendation on February 7, 2003 recommending that the plaintiff's motion for summary judgment be denied, the defendant's motion for summary judgment be granted, and the findings of the Commissioner be affirmed. The magistrate judge failed to address the plaintiff's supplemental motion. The plaintiff filed time-

ly objections to the recommendation, and this matter is now before the Court.

The Court has reviewed the file, the report and recommendation, the motion papers, and the plaintiff's objections and has made a *de novo* review of the administrative record in light of the parties' submissions. The plaintiff's objections criticize what she terms the magistrate judge's "boilerplate" recommendation since it was unresponsive to the arguments raised in her brief. The plaintiff raised two, straightforward arguments in her motions: that the Administrative Law Judge (ALJ) did not properly follow the regulations in determining whether the combination of the plaintiff's severe impairments medically equaled one of the Secretary's listings; and that the medical consultant's testimony was not fully transcribed and therefore the administrative record was incomplete. The magistrate judge failed to decide either of these issues and did not even mention either argument in his report. In fact, after reviewing the motion papers and the magistrate judge's report, although it is apparent that the magistrate judge reviewed the administrative record, it is difficult to conclude that the magistrate judge ever read the arguments in the briefs. As the court of appeals previously has noted, "[i]n order to review adequately an appeal of the district court's or a magistrate judge's decision in this type of case, we must have an indication that the district judge or the magistrate judge has reviewed and considered each major, relevant, and well-articulated contention of the parties. Courts do ordinarily impose a minimum 'requirement of the statement of reasons' in these appeals for the decision on appeal." *Ivy v. Sec'y of Health & Human Servs.*, 976 F.2d 288, 289 (6th Cir.1992) (citing *McGee v. United States*, 462 F.2d 243, 246–47 (2d Cir.1972)). The absence of such indication can signal a failure of due process. *Ibid.*

The Court endorses the efforts of magistrate judges to efficiently resolve the cases referred to them that come before the court. In Social Security disability cases, many issues frequently recur and invoke common precedent. The treatment of these issues may seem repetitious at times and utilize language that might be characterized as "boilerplate." There is nothing wrong with the use of boilerplate language when it is responsive to the issues raised by the parties. But deciding these cases begins with an analysis of the arguments actually raised by the parties and oftentimes will require more intellectual investment than assembling a report merely by choosing from a standard set of word processor macros. Adopting the latter approach to the exclusion of the former can constitute an abandonment of the obligation to conduct the judicial review of the Commissioner's decision contemplated by 42 U.S.C. § 405(g), and the responsibility entrusted to magistrate judges by 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). The error that is manifest from the report in this case, however, is cured by a *de novo* review, which the Court has undertaken. *See Ivy*, 976 F.2d at 289–90.

The plaintiff, Karen Stead, presently fifty-three years old, applied for a period of disability, disability insurance benefits, and supplemental security income benefits on August 10, 1998 when she was forty-eight years old. She had worked in various capacities as a car rental agent, cashier, and customer service representative. She also completed high school and one year of college. The plaintiff last worked on January 10, 1998, which is the date she alleges her disability began from symptoms confirmed some days later as coronary artery disease. Since 1998, the plaintiff has undergone several cardiac-related laboratory studies. She has been diagnosed with hypertension, diabetes, and arthritis of the hip, leg, and back. Her coronary artery

disease is manifested by unstable angina, and she has been diagnosed with depression. She suffers from sleep apnea, and she has a loss of sensation in her hands and feet. The sensation abnormalities are transient; a medical consultant opined that the tingling in her hands may be due to the onset of carpal tunnel syndrome, but the numbness in her feet may be caused by peripheral neuropathy.

In her application for disability insurance and supplemental security income benefits, the plaintiff alleged that she was unable to work due to diabetes, hypertension, coronary artery disease, and depression. On December 7, 1999, the plaintiff, then forty-nine years old, appeared before ALJ Roger W. Thomas, who filed a decision on February 14, 2000 in which he found that the plaintiff was not disabled. The ALJ reached that conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. §§ 404.1520, 416.920. The ALJ concluded that the plaintiff had not engaged in substantial gainful activity since January 10, 1998 (step one); the plaintiff suffered from substantial impairments consisting of severe hypertension, coronary artery disease with symptoms of angina, non-insulin dependent diabetes, speculative carpal tunnel syndrome in the hands, sleep apnea, mild arthritis, and depression with anxiety, which were "severe" within the meaning of the Social Security Act (step two); the plaintiff did not have an impairment or combination of impairments that met or equaled a listing in the regulations (step three); and the plaintiff's retained the functional capacity to perform her previous work as a customer service representative, which the ALJ characterized as semi-skilled and sedentary (step four). Because the ALJ found the plaintiff not disabled at step four of the process, he did not proceed to step five of the analysis.

In assessing the plaintiff's residual functional capacity, the ALJ engaged in a thorough analysis of the medical evidence in the record and concluded that the plaintiff could perform sedentary work restricted to occasionally lifting ten pounds, a sit or stand option after remaining standing for twenty minutes, standing only two hours out of an eight hour day, avoiding fine visual work on objects smaller than three-sixteenths of an inch, avoiding environments with high concentrations of dust and fumes or gases, and performing only tasks of a semi-skilled complexity involving at most brief and superficial contact with the public.

Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied the plaintiff's request for review on September 14, 2001.

The magistrate judge found that the ALJ's determination of residual functional capacity was supported by substantial evidence. However, the plaintiff does not challenge that determination, and the magistrate judge's findings in this regard are irrelevant to the disposition of the issues raised in this request for judicial review. Rather, the plaintiff insists that the residual functional capacity determination is inconsequential to the outcome of this case because the ALJ ought to have found the plaintiff disabled at step three of the sequential analysis since her combination of impairments are medically equivalent to Listing 9.08A in the regulations. *See* 20 C.F.R. Pt. 404, Sutpt. P § 9.08A.

In this Circuit, in order to qualify as "disabled" under a Listing in the Secretary's regulations, a claimant must demonstrate that he or she meets *all* of the criteria contained in the Listing. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir.1986). Alternatively, "[a] claimant can demonstrate that she is disabled because her

impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to all the criteria for the one most similar listed impairment.'" *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)). "This decision must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques." *Land v. Secretary of Health and Human Services*, 814 F.2d 241, 245 (6th Cir.1986) (citing 20 C.F.R. § 404.1526(b)).

■ Listing 9.08A states that a person will be found disabled if that person suffers from diabetes mellitus with "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. Pt. 404, Sutpt. P § 9.08A. Listing 11.00C states:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerbellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Sutpt. P § 11.00C.

At the administrative hearing, the ALJ called as a witness a neutral medical consultant, Dr. Abdul A. Razzak, who is a specialist in internal medicine and anatomical and clinical pathology. Dr. Razzak conducted a review of the plaintiff's medical records at the request of the Commissioner. He accepted the description of the plaintiff's impairments stated in the April 10, 1999 report of Dr. Mihaela Ionescu made at the request of the Michigan Disability Determination Service. These impairments included chest pains twice weekly of approximately ten minutes duration associated with coronary artery disease, a five-year history of arthritis in her right hip, foot sores, hypertension, and diabetes mellitus. The plaintiff had undergone cardiac angiography, which disclosed a single vessel occlusion of sixty percent. Dr. Ionescu reported subjective complaints of numbness in both feet and decreased vibratory sensation below the knees. Dr. Razzak commented that "[t]his lady she has a lot of disease considering her young, relatively young age." Tr. at 331. He testified further:

> The diabetes myelitis [sic] on the neurological did show decrease in the vibration sense. Usually in peripheral neuropathy they, they are outset (INAUDIBLE) but she looks like she's on the way to develop that. The symptoms in the hand I don't think are related to neuropathy most likely suggestive of carpal tunnel syndrome but EMG can, so in, in summary there is no single diagnosis which meets the listing one hundred percent but I think with, with the combination of these illnesses almost she, she, she is there.... If you look at diabetes is 9.08 Subsection A.

*Id.* at 331–32. The ALJ then engaged in the following dialog with Dr. Razzak:

> Q. Now what listing are you considering as far as equaling to?
>
> A. If, if, if you look at the diabetes is 9.08 Subsection A.
>
> Q. Uh-huh.
>
> A. And the degenerative joint disease we have to look under the weight bearing and the, the spine. I, I think mostly we'll go with the spine. The sleep apnea, I think the combi-

nation at this age it would restrict her great [sic].

Q. Let's see if I understand what you're saying. Let me check the listing here a minute. The obesity listing is not present anymore.

A. Yes they took that out.

Q. 9.08, now as I understood your testimony on the neuropathy there isn't a firm finding of peripheral neuropathy but she may have some carpal tunnel is that right?

A. No in the lower extremities I think are suggestive of early neuropathy—

Q. All right.

A. —but the symptoms she's relaying in the hands the relief in twenty minutes and so on could be suggestive of early carpal tunnel syndrome.

Q. Okay. All right. So 9.08A listing is neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement of gait and station. Do you think that's, [sic] satisfies the reference?

A. I, I said it's, it's earlier, I said none of them alone is, is met, but when weight [sic] this with the blood pressure, with the coronary artery disease, with the sleep apnea—

Q. Okay.

A. —all of them together and from the—

Q. Okay let me, let me ask you about that, the coronary angiography with the injection [sic] fraction of sixty percent is that the range?

A. Yes but she does have clinical angina and she has—

Q. Okay.

A. —I think the injection [sic] fraction tells us the heart is pumping but does not (INAUDIBLE).

Q. Okay that's what I'm trying to get at doctor, as far as the clinical angina tells you what then? Can you put it in lay mans [sic] terms so I can understand what, what—

A. It's poor circulation in the coronary, coronary artery and this usually will deal more with exertion and so on.

Q. Okay now is she rated or are you able to rate her based on what it is, the New York Classification System for function as far as how her heart does. She had a stress test or anything that tells us her exertional level?

A. It's really hard to put into words.

Q. Okay. I think you mentioned you thought if she, it would reduce her ability to exert herself based on her heart then to what level of exertion, did you say or maybe you didn't say?

A. No what I said, the, when you have arterial sclerosis in a coronary artery, when the heart rate like the, the circulation and the heart have happen doing so the heart is pumping sixty or seventy beats a minute like (INAUDIBLE) before you to get adequate circulation. For some reason she has to stress herself and the, the heart is pumping now hundred ten, hundred twenty so the, the correct time is very short—

Q. Okay.

A. —so it will, the, the area which is narrow it will (INAUDIBLE).

Q. Okay even at rest she'll have a higher—

A. Emotion can, can, can.

. . .

Q. Okay. Okay and do you think she's had those impairments and level of severity since her alleged onset—

A. Yes.

Q. —in January of 1998?

A. Yes.

*Id.* at 332–35.

The ALJ did not accept Dr. Razzak's opinion that the plaintiff's combination of impairments was medically equal to Listing 9.08A because the ALJ believed that Dr. Razzak considered vocational factors in reaching his conclusion, specifically the plaintiff's age. The ALJ noted Dr. Razzak's remark that the plaintiff had many diseases for her age, and later that the combination of ailments "at this age" would greatly restrict her. *Id.* at 34. The ALJ then reviewed the other medical evidence in the record and concluded that the combination of the plaintiff's impairments was not as severe as contemplated by Listing 9.08A.

The Court's task in reviewing a Social Security disability determination is a limited one. The ALJ's findings are conclusive if they are supported by substantial evidence, according to 42 U.S.C. § 405(g). Consequently, the Court's review is confined to determining whether the correct legal standard was applied, and whether the findings are supported by substantial evidence on the whole record. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Sec. of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). This Court may not base its decision on a single piece of evidence and disregard other pertinent evidence when evaluating whether substantial evidence exists in the record. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). Thus, where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec. of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). The Sixth Circuit has stated that the role of the Court "is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony." *Wright*, 321 F.3d at 614. Therefore, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

In this case, the Court believes that the ALJ committed legal error when he concluded that Dr. Razzak relied on vocational factors in reaching his opinion on medical equivalency. Although a claimant's age certainly is a vocational factor, it is not exclusively so. Age is also a medical factor. A patient who exhibits a certain degree of arterial blockage at age sixty, for example, may be diagnosed and treated differently than a person at, say, age twenty who exhibits the same symptoms. The blood chemistry of a child likely would be different in many respects than that of an elderly person. Age is an important medical factor physicians consider when evaluating patients and constitutes part of the medical history typically gathered by diagnosticians. The context in which Dr. Razzak mentioned the patient's age suggests that he considered that factor as part of his medical work-up, not as a vocational factor to determine the plaintiff's capacity to work.

The responsibility for determining medical equivalence rests with the ALJ at the administrative hearing level of the disability determination process. *See* 20 C.F.R.

§ 416.926(d). However, in making that determination, the ALJ must "consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence." 20 C.F.R. § 416.926(b). In this case, it appears that the ALJ improperly rejected the medical consultant's opinion because of an erroneous conclusion that age was an impermissible factor for the physician to consider in reaching a medical conclusion. Therefore, substantial evidence does not support the ALJ's decision.

That leaves the question whether further fact-finding is required, for "[i]f a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994). Because the ALJ did not properly evaluate the testimony of the medical consultant, the facts concerning medical equivalence were not fully determined. Therefore, a remand under sentence four of Section 405(g) for further proceedings is required. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97–98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Because of this disposition, it is unnecessary to address the plaintiff's argument that Dr. Razzak should be permitted to listen to the tape of the administrative hearing and attempt to fill in the "inaudible" portions of the transcript.

After a *de novo* review of the entire record and the materials submitted by the parties, the Court cannot conclude that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching his conclusion.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt # 23] is **REJECTED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 12] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the plaintiff's supplemental motion [dkt # 26] is **DENIED** as moot.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 15] is **DENIED.**

It is further **ORDERED** that the findings of the Commissioner are **REVERSED,** and the case is **REMANDED** to the Commission for further proceedings.